(No. 25627.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM A. BOTE *et al.* Plaintiffs in Error.

*Opinion filed April 10, 1941.*

SHAW, J., dissenting.

CARL H. PREIHS, FRANK M. RAMEY, and HILL, BUL-LINGTON & VANDEVER, for plaintiffs in error.

JOHN E. CASSIDY, Attorney General, GEORGE A. HALL, State's Attorney, and A. B. DENNIS, (J. D. WILSON, of counsel,) for the People.

Mr. CHIEF JUSTICE GUNN delivered the opinion of the court:

Plaintiffs in error, William A. Bote, Ray Linn and Edward Schaper, were indicted by the grand jury of Mont-

gomery county, Illinois, in September, 1939, for burglary and larceny committed January 18, 1937. Ben Wharton was also indicted and pleaded guilty during the course of the trial. The other defendants were convicted of grand larceny and sentenced to imprisonment in the penitentiary.

During the night of January 18, 1937, the residence of William Hoehn was broken into and a small safe containing several thousand dollars and other property was carried away. Defendant Bote operated a tavern in Nokomis. Linn lived at Moweaqua about thirty miles away. Schaper worked in the store of his father in Nokomis. The principal evidence for the People consisted of the testimony of James Cameron, an ex-convict who was paroled to Bote, and Ben Wharton who testified he was an accomplice to the crime. Cameron testified to a conversation with Bote in the tavern about 5:00 o'clock in the afternoon of January 18, at which Linn, Schaper and Wharton were present. Bote is alleged to have stated that William Hoehn was going to be away that night and that he knew he kept money in his house in a safe and that they could get it that night. Cameron also testified that during the evening Linn, Schaper and Wharton were in and out of the tavern; that Bote furnished cotton gloves so that no finger-prints would be left and that they left the tavern after 11:00 o'clock out the back door; that he went as far as Bote's house and then declined to go any further, and that at 11:00 o'clock, when the tavern closed, he and the four defendants were the only persons in the room. Ben Wharton testified to being in the tavern and hearing Bote say it would be a good time to steal the safe; that he was in and out all evening because Bote did not know for sure that they would do it that night. He testified that around 10:00 o'clock they were all seated around the table and that he and Linn, Schaper and Cameron waited in the back room of the tavern and that they all went out the back door, went to Hoehn's house, pried the windows open and took the safe out, and that he did not

further accompany Bote, Schaper and Linn, but the next day Bote told him he did not know for sure where the safe was and that he received none of the money. After the trial was over he was admitted to probation by order of court.

The testimony of the two police officers is to the effect that they tapped on the front door of the tavern at 11:00 o'clock as a warning to close the tavern and that at 11:30 they heard voices in the back room of the tavern and recognized that of Bote. Plaintiffs in error did not testify. They offered testimony tending to prove an alibi which, if believed, impeached the evidence given by Wharton and Cameron in material respects.

Plaintiffs in error alleged the indictment should have been quashed because it was returned after the law authorizing women to serve upon juries went into effect and that no women were upon the grand jury, and also upon the ground that the court improperly instructed the jury with reference to the weight to be given the testimony of convicts and accomplices, and that the court refused the offer of testimony tending adversely to affect testimony of both Wharton and Cameron.

The grand jury by which plaintiffs in error were indicted, was summoned for the April term, 1939, before the amendment to the Jurors act. It was recalled in September, 1939, by the order of the circuit judge, and an indictment was returned before the grand jurors were selected at the September meeting of the board of supervisors for the next grand jury.

The act of May 12, 1939, provided that at the September meeting in each year of the county board, it should make a list of the legal voters of each sex for jury service. (Laws of 1939, p. 691.) A statute will not be construed as retrospective unless it clearly appears from its context. (*People* v. *Sears*, 344 Ill. 189.) The grand jury previously selected and summoned for the April term, 1939, of the Montgomery

county circuit court, was subject to recall upon the order of the circuit judge and he determines whether the occasion arises for its recall. (*People* v. *McCauley*, 256 Ill. 504.) There is nothing in the provisions of the amended Jurors act that restricted the power of the circuit judge to recall a grand jury selected before the amendment of the act, until grand jurors with the qualifications specified by the act were available. The April grand jury having been recalled in the manner provided by the statute, had legal authority to return the indictment against plaintiffs in error. The objection that three members of the grand jury were improperly designated at the April term of court to fill vacancies is not fatal to the indictment, as the provision that grand jurors shall be selected twenty days before the first day of the term of court is not mandatory. *People* v. *Grisby*, 357 Ill. 141; *People* v. *Lieber*, id. 423.

Error is also predicated because the court allowed the assistant State's attorney to read sections 36 and 167 of division 1 of the Criminal Code (Ill. Rev. Stat. 1939, chap. 38, pars. 84 and 387) to the jury. The first section defines and provides the punishment for burglary and the second defines the crime of larceny. These two provisions of the statute were set out *haec verba* in People's instructions Nos. 9 and 18. It is not perceived how the plaintiffs in error could be injured by the mere reading of these sections of the statute and not be injured by the court giving instructions containing the same identical matter. What was said in *People* v. *DeLordo*, 350 Ill. 148, 162, was said with reference to counsel reading the opinions of this court to a jury. It is necessary for the jury to know the issue involved in any case and this, in a criminal case, is the statute defining the crime. There is a manifest difference between reading or reciting the definition of a crime, which applies generally, and reading the opinion of a court which, while it may relate to a given crime, is based upon the particular facts and circumstances of the case. We can see how a

defendant might be prejudiced by indiscriminate reading of the provisions of the Criminal Code, but the conduct of a trial is to a large extent within the discretion of the circuit judge, and while the prosecution should be kept within bounds, it should not be unreasonably hampered or restricted in presenting its case. There was no error in this respect.

Serious objection was taken to instructions given on behalf of the People. One of the witnesses testifying for the People was an ex-convict, and People's instruction No. 13 advised the jury not to disregard the testimony of the convict witness for that reason alone, and concluded: "But you should determine the credibility of a convict witness upon the same consideration as any other witness." People's instruction No. 7 advised the jury that defendant might be convicted upon the uncorroborated testimony of an accomplice and concluded with the following: "The testimony of an accomplice, like all other evidence in the case, is for the jury to pass upon." Objection was taken to the giving of these instructions, and under our ruling in *People* v. *Weitzman,* 362 Ill. 11, and *People* v. *Millard,* 370 id. 214, instruction No. 13 standing alone would be subject to criticism. The court, however, gave instructions upon behalf of the defendants, which fully advised the jurors as to the weight to be given to the testimony of an accomplice. Defendants' instruction No. 3 told them they might entirely disregard the testimony of an accomplice if they·saw fit so to do, and defendant's instruction No. 7 advised them to receive the testimony of an accomplice with caution, and to take into consideration the fact that he was an accomplice and not to convict unless they were satisfied beyond a reasonable doubt of the truth of such testimony. This instruction referred specifically to the testimony of both of the witnesses as accomplices. In *People* v. *Birger,* 329 Ill. 352, an instruction as to accomplices, containing the same language objected to here, was given on behalf of the People. The

court, however, at the request of defendant, gave two instructions setting out the correct rule. It was held defendant was not prejudiced by the giving of the faulty instruction. Under the circumstances there was no error in the giving of People's instructions Nos. 7 and 13.

Over the objection of plaintiffs in error the court permitted a witness to testify that the defendant Bote was operating a gambling house above the restaurant. This was error, as it had no relation whatever to the offense for which defendants were being tried. It is true the court later on, upon consideration, struck such evidence from the record, but later on in the trial reference was again made to this circumstance in the cross-examination of the wife of the plaintiff in error Bote. The court refused the offer of plaintiff in error Bote to prove the witness Cameron had threatened to "get" Bote for telling him that his conduct was such that he was violating his parole. This testimony was admissible for the purpose of showing animus or feeling. *People* v. *Strauch*, 247 Ill. 220.

During the course of the trial Ben Wharton, who had been jointly indicted with plaintiffs in error, pleaded guilty and testified on behalf of the People. On cross-examination defendants attempted to show that after he had signed the confession he had received different treatment at the jail, and was given different kind of food from other prisoners, and also attempted to prove, on cross-examination, that after he had pleaded guilty he was not taken into custody by the officers and not locked up in the county jail, and was accompanied to the court room by his father. Objections to this line of testimony was sustained by the court. In *People* v. *McKinney*, 267 Ill. 454, a conviction was reversed because the trial court refused to allow cross-examination of an accomplice as to his reason for testifying in the case, and denying the defendants the right to inquire as to whether he received the promise of a lighter sentence. In *People* v. *Gleitsmann*, 361 Ill. 165, the refusal of the

trial court to permit cross-examination of an accomplice, attempting to show substantially the same things, was held to be error. It was error in this case for the court to thus limit the cross-examination of the witness Wharton.

The conviction in this case depended very largely upon the testimony of the accomplices. Cameron claims that the conspiracy to commit the burglary with which plaintiffs in error were charged, was entered into in the restaurant of plaintiff in error Bote, and that he, Cameron, was present through the evening until it closed, and accompanied Bote to the place of burglary. There is substantial evidence he was not in the restaurant during the entire evening. There is likewise evidence tending to show none of the plaintiffs in error could have been present at the burglary at the time fixed by such accomplice Wharton. In a case where the evidence is close it is essential that the right of the defendants to adduce matters of impeachment upon cross-examination of an accomplice witness, and to show other matters affecting his credibility, be not unduly limited by the court.

We will not comment upon the weight of the testimony in this cause because a new trial will be necessary. We are of the opinion the court erred in limiting the cross-examination of the witness Wharton, and in permitting the People to prove plaintiff in error Bote operated a gambling house, and in refusing to permit proof to be made that Cameron had made threats against plaintiff in error Bote. Other errors are alleged which will not recur on a new trial.

For the foregoing reasons the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Mr. JUSTICE SHAW, dissenting.