2 Ill. App.3d 297 (1971)
275 N.E.2d 737
THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v.
R.D. JACKSON, Defendant-Appellant.
No. 53750.
Illinois Appellate Court  First District.
November 15, 1971.
*298 Arthur E. Engelland and Robert S. Bailey, of Chicago, for appellant.
Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Paul P. Bieber, Jr., Assistant State's Attorneys, of counsel,) for the People.
Reversed and remanded.
Mr. PRESIDING JUSTICE BURKE delivered the opinion of the court:
On January 17, 1967, defendant, R.D. Jackson, and Jonnie Mae Kimmons, his mother-in-law, were indicted for unlawfully possessing marijuana, in violation of section 22-3 of the Criminal Code. (Ill. Rev. Stat. 1965, ch. 38, par. 22-3.) Both Jackson and Mrs. Kimmons pleaded not guilty and waived their right to trial by jury. At the bench trial the charge against Mrs. Kimmons was dismissed when the prosecution concluded its case-in-chief. Jackson was found guilty, convicted of the crime as charged, and subsequently sentenced to serve a term of no less than two, nor more than four years in the penitentiary. Defendant appeals.
It appears from the record that on June 8, 1966, pursuant to a duly executed search warrant, Detective Richard McKelvey of the Chicago Police Department, with three other police officers, searched the third floor apartment of the building at 4053 West Van Buren Street, Chicago. Mrs. Kimmons was the only adult in the apartment at this time.
The search of this apartment revealed a quantity of marijuana in a hat box under the bed in the front bedroom. When Mrs. Kimmons was confronted with this contraband, she stated that she had no knowledge of its presence. Officer McKelvey testified that while the search was being conducted the telephone rang and he heard the caller say, "Get the key, get the stuff out of the room, the police are coming." Mrs. Kimmons indicated to the investigating officers that she was unaware of the identity of the caller.
In addition to the marijuana, an electric bill and final reminder from the electric company were found in the dresser which was located in the same room where the marijuana was discovered. These bills were addressed to the name of Jimmie Brown. Letters addressed to R.D. Jackson and letters and magazines addressed to Jimmie Brown were found in other portions of the apartment. Articles of male and female clothing were also found in the bedroom where the marijuana was found as well as in its adjacent closet.
On direct examination by the prosecution, Officer McKelvey testified that he was aware of the fact that defendant used the following aliases: Jimmie Brown, Flip, Robert Jackson and R.D. Jackson. This officer *299 further testified that he was not present at the time of defendant's arrest.
At the trial, Mrs. Kimmons testified that defendant had been married to her daughter for four or five years and that they resided together in the apartment. She further stated that the door to the room where the marijuana was found was always locked, that she never cleaned this room and that she paid defendant $65.00 per month for her part of the rent. At the conclusion of her testimony, the trial judge, being of the opinion that Mrs. Kimmons was not aware of the presence of the marijuana, dismissed the charge against her.
Sergeant Kurowski testified that pursuant to a warrant, he and Officer Donald Dura arrested the defendant on the evening of September 7, 1966, at a pool room located at 1144 South Kedzie Avenue, Chicago. Officer Kurowski testified that upon seeing the defendant, he asked him to identify himself. Defendant identified him to be R.D. Jackson and was then placed under arrest. When advised of his constitutional rights, this officer stated that the only statement which defendant made at that time was; "I know that." When asked if Jackson said anything other than: "I know that," Officer Kurowski responded negatively.
Detective Donald Dura testified that when he and Officer Kurowski informed Jackson that he was under arrest, he immediately responded stating: "What do you want me now for? You put me out of business when you got my stuff at the house." Over defendant's objection, the trial judge ruled the evidence of that statement to be admissible in evidence.
Jackson, when called to testify in his own behalf, stated that he did not reside in the 4053 West Van Buren apartment during June of 1966, that he did not use the name, Jimmie Brown; that at the time of his arrest he did not make the statement which Officer Dura testified to, and that he knew nothing about the marijuana which was found in the apartment. Defendant further testified that to his knowledge, the other occupants of the apartment had access to the bedroom where the narcotic was found.
The last witness to testify on defendant's behalf was Carol Jackson, defendant's wife. She stated that she resided in the Van Buren apartment during June of 1966, but that her husband did not Mrs. Jackson testified that she and her husband separated in January of 1966, and that since then, he had not been to their apartment.
In prosecuting this appeal, defendant has raised four contentions. They are: (1) that the testimony of Mrs. Kimmons should not have been considered against him; (2) that the evidence of the statement which he allegedly made at the time of his arrest should have been suppressed; (3) that the lower court erred in refusing to allow the defense to read to Officer McKelvey, the transcript of the testimony which he rendered *300 at the preliminary hearing; and (4) that the evidence was insufficient to establish his actual or constructive possession of the marijuana.
 1, 2 Regarding the admissibility of Mrs. Kimmons testimony as it related to the issue of defendant's guilt, it is urged that this testimony should not have been considered by the trial judge due to the fact that defendant's attorney was not afforded the opportunity to cross-examine her. It does not appear from the record that defendant objected to the consideration of this testimony, that defendant requested to cross-examine this witness, or that defendant was precluded from cross-examining this witness. The failure to object to the admission of evidence must be considered to constitute a waiver of that objection. Callaghan v. Miller, 17 Ill.2d 595; Bonczkowski v. Kucharski, 13 Ill.2d 443.
 3 The introduction of the evidence of the statement allegedly made by defendant at the time of his arrest, did not, as he now contends, violate the holdings of the Supreme Court in Miranda v. Arizona, 384 U.S. 436, or Orozco v. Texas, 394 U.S. 324.
The Miranda and Orozco decisions dealt with the admissibility of statements which were the products of in-custody interrogations conducted without apprising the suspect of his constitutional rights.
The distinguishing aspect of the present case is that the statement, the introduction of which defendant now complains was not the product of an interrogation, but was merely a spontaneous and voluntary declaration. The language of the Supreme Court in Miranda, and found at 384 U.S. 436, 378, is pertinent to the case at bar. There it is stated:
"Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."
In the case of In re Orr, 38 Ill.2d 417, it was held that voluntary spontaneous declarations may be received in evidence irrespective of whether or not the suspect has been apprised of his constitutional rights. The court at 38 Ill.2d 417, 423 stated:
"* * * in our opinion, it is clear that the use in evidence of the statement of respondent was not proscribed by Miranda. That case requires that `a person * * * taken into custody or otherwise deprived of his freedom of action in any significant way * * *, [p]rior *301 to any questioning, * * * be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. (384 U.S. at 444, 16 L.Ed.2d at 706, 86 S.Ct. 1602.) While Officer Sherry admitted that respondent was not advised of his right to remain silent prior to giving his oral statement, he also asserted, without contradiction, that no questioning preceded it. It is therefore apparent that the issue here is not the necessity of a warning prior to questioning, but its necessity before a spontaneous declaration may be received in evidence. (Emphasis added.) Although we have not heretofore considered this question, our research discloses several cases in which other courts have done so. All agree that Miranda does not require police to interrupt a suspect in the process of making a spontaneous statement in order to warn him of his constitutional rights, and that a statement made in the absence of any questioning is not inadmissible by virtue of the failure to give such warning. (Ballay v. People, (Colo.) 419 P.2d 446, 449; United States v. Cruz, (W.D. Tex.) 265 F. Supp. 15, 20; Diaz v. United States, (E.D. La.), 264 F. Supp. 937, 945; People v. Jones, (D.C.A.), 52 Cal. Rptr. 924, 926; see also State v. Hymore, 9 Ohio St.2d 122, 224 N.E.2d 126, 129.) In our opinion, these decisions are correct."
Also see People v. Zepeda, 47 Ill.2d 23 and People v. Ricketson, 129 Ill. App.2d 365.
In view of the language found in Miranda, and the holding of In re Orr, we conclude that in the present case, it was proper for the trial judge to admit the evidence of defendant's voluntary and spontaneous statement.
The third contention is that the lower court erred in refusing to allow defendant's attorney to read to Officer McKelvey, the transcript of the testimony which he gave at the preliminary hearing.
The record indicates that after the defendant testified in his own behalf, Officer McKelvey was recalled to testify by the defense. Defendant's attorney stated that he was calling this witness for the purpose of proving that defendant did not make the inculpatory statement to which Officer Dura testified. When asked if he recalled having a conversation with defendant on September 7, 1966, Officer McKelvey stated that defendant did not say anything to him at the time of his arrest. When asked what was said during the conversation between defendant and himself later that day at the police station, McKelvey stated that he couldn't remember. Defendant's attorney then showed this witness a document which he identified as the transcript of testimony elicited at the preliminary hearing. The witness further stated that this document refreshed his recollection. *302 Defendant's attorney then attempted to read to Officer McKelvey the following statements which he allegedly made at the preliminary hearing:
"Now, on the 7th of September, 1966, at 1144 North Kedzie, or South Kedzie, we had an opportunity to be furnished with information stating that Jackson, otherwise named Jimmie Brown, was presently at this location. We went to that location and placed Mr. Jackson under arrest. * * * We went to that location and placed Mr. Jackson under arrest via the arrest warrant taken out for him for the possession of marijuana. At the time he was arrested he stated he knew nothing about marijuana, that occasionally he did smoke marijuana but preferred booze over the marijuana."
When the prosecution objected to this form of cross-examination, defendant's attorney indicated to the court that he wanted to use this prior testimony for the purpose of impeachment. The trial judge, in sustaining the prosecution's objection stated that he would allow the witness to be impeached but ruled that this particular method was improper due to the fact that as of that time, the witness had not testified to the contrary. We think the trial judge was in error.
 4, 5 It appears that when Officer Mc Kelvey testified as a witness on behalf of the state, he stated that he was not present at the time defendant was arrested. This is clearly inconsistent with the statement which this witness testified to at the preliminary hearing and therefore admissible for impeachment purposes. (People v. Moses, 11 Ill.2d 84.) It is the rule that the exclusion of evidence, designed to impeach a witness or affect his credibility, will constitute reversible error where the effect has been prejudicial. (People v. Whitehead, 35 Ill.2d 501; People v. Malston, 122 Ill. App.2d 466.) The ultimate issue which must therefore be resolved is whether or not this error was prejudicial to the rights of defendant.
Aside from the evidence of the inculpatory statement which defendant was alleged to have made, the only evidence presented which related to the issue of defendant's residing in the apartment was the testimony of Mrs. Kimmons and the presence of the men's clothing and mail which were found in the apartment.
Although Mrs. Kimmons stated that defendant lived in the apartment, at no time did she testify as to when he lived there. Likewise, the finding of mail bearing defendant's name does not necessarily indicate that he was a resident of that apartment at the time the police conducted its search. Regarding the men's clothing which was found in the bedroom and its adjacent closet, it must be pointed out that the record is devoid of any evidence which would indicate that this clothing was defendant's property.
*303  6 The issue of whether defendant made the alleged inculpatory declaration was an important consideration on the question of his possession of the discovered marijuana. The refusal of the court to permit the defense to cross-examine Officer McKelvey about his claimed inconsistent testimony given at the preliminary hearing was, therefore, prejudicial to the rights of the defendant. To hold otherwise would require speculation as to what that cross-examination would reveal. The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.
Reversed and cause remanded with directions.
LYONS and GOLDBERG, JJ., concur.