(No. 43933.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. SAM GALLO, Appellant.

*Opinion filed June 4, 1973.*

EDWARD M. GENSON, FRED COHN and AR-
NETTE R. HUBBARD, all of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Spring-
field, and EDWARD V. HANRAHAN, State's Attorney, of
Chicago (JAMES B. ZAGEL, Assistant Attorney General,
and ELMER C. KISSANE, JAMES S. VELDMAN, and
TERENCE J. MAHONEY, Assistant State's Attorneys, of
counsel), for the People.

MR. JUSTICE SCHAEFER delivered the opinion of
the court:

Following a bench trial in the circuit court of Cook
County, the defendant, Sam Gallo, was found guilty of
criminal usury (Ill. Rev. Stat. 1967, ch. 38, par. 39—1) and
intimidation (Ill. Rev. Stat. 1967, ch. 38, par. 12—6) and
sentenced to concurrent terms of imprisonment for not
less than three nor more than five years. He appealed
directly to this court.

The State's principal witness was Donald Doyle, a
former truck driver for a Chicago newspaper. He testified
that on October 5, 1968, he borrowed $300 from the
defendant in order to put back money he had stolen from
his route collections and to pay off other debts. The
interest payments on this loan were to be $33 per week,
none of which would reduce the principal amount. He
further testified that in late November, 1968, after he had
missed several weekly payments on the loan, the defendant
telephoned him and said he would "break my legs in three
or four places unless I come up with some money." Then,
on December 1, 1968, the defendant told him that a $33
per day penalty had been imposed, so that he now owed
$2,500, which could be paid off at a rate of $25 per week
for 25 months. Doyle still made no payments and did not
hear from the defendant again until February, 1969, when

the defendant telephoned and said, "You are killing yourself, and unless you come up with some money it will be out of my hands." Doyle testified that after this phone call he reported the matter to the State's Attorney's office.

The State's Attorney's police then arranged a controlled payment of money to the defendant. On March 30, 1969, Detective Donald Masnjak, posing as Doyle's brother-in-law, accompanied Doyle to a meeting with the defendant and offered to pay Doyle's debt. According to both Doyle and Masnjak, the defendant stated that Doyle owed him $2500, but that he could make a deal for $1250. Two hundred dollars was then paid to the defendant and arrangements were made for payment of another $1050. On April 12, 1969, a second meeting between Doyle, Masnjak and the defendant took place, at which Masnjak gave the defendant $550 and promised to pay the remaining $500 the next week. Police officers, acting in response to a prearranged signal from Masnjak, then arrested the defendant and seized the $550 in marked bills.

The defendant did not deny receiving any of the money from Masnjak. He testified, however, that as a favor to a mutual friend, Ralph Casale, he had originally loaned Doyle $1250, which was to be repaid at the rate of $25 per week, and that the $750 he received was in payment of that loan. He denied telling Doyle and Masnjak that Doyle owed him $2500, and he denied making any threats to Doyle over the telephone.

Ralph Casale testified that in August of 1968, Doyle told him that he needed almost $1000 to pay his debts and asked him to contact the defendant about a loan; that he contacted the defendant and told him that he would back up a loan to Doyle; and that in the middle of October, 1968, the defendant told him he had loaned Doyle $1250.

Ralph Bartuch, a fellow employee of Doyle, testified that in August of 1968, Doyle told him he needed about $800 to pay his debts. The defendant's brother-in-law,

Peter Catizone, another of Doyle's fellow workers, testified that on December 1, 1968, he overheard Doyle tell the defendant that he could not get the $1250 he owed him. Evidence was also introduced to show that on September 30, 1968, the defendant's wife withdrew $900 from her savings account. The defendant testified that he used this money to make the loan to Doyle.

The court found the defendant guilty of both criminal usury and intimidation.

At the outset the defendant attacks the indictment upon the ground that the prosecution was barred by the statute of limitations, and that the indictment was substantively inadequate. The offense charged is a misdemeanor and the period of limitation is 18 months. (Ill. Rev. Stat. 1967, ch. 38, par. 3—5) Three indictments were returned in this case, and the defendant went to trial on the third. The first indictment, No. 69—1774, was returned on May 29, 1969, and the second, No. 70—1330, was returned by the April, 1970, grand jury. The third indictment, No. 70—7027, was returned on July 14, 1970. Each indictment alleged that the offenses occurred on March 30, 1969, April 12, 1969, and in late November of 1968.

Section 3—7(c) of the Criminal Code excludes from the statute of limitations any period in which a prosecution is pending against the defendant for the same conduct. To meet the requirements of this section the third indictment stated:

"Further, the Grand Jurors present that the period within which the prosecution of this count of the instant indictment must be commenced does not include the period between May 29, 1969, and the date of return of the instant indictment, in that:

'On May 29, 1969, an indictment to wit: Indictment Number 69—1774 was voted and returned by the May 1969 Grand Jury of the Circuit Court of Cook County, Illinois, against Sam Gallo; which said Indictment Number 69—1774 was a prosecution

against Sam Gallo for the same conduct as was charged in Indictment Number 70–1330, which is a Reindictment of Indictment 69–1774. The Indictment Number 70–1330 was voted and returned by the April 1970 Grand Jury of the Circuit Court of Cook County, Illinois, against Sam Gallo; and which said Indictment Number 70–1330 remains in full force and effect and is now this day of return of the instant indictment, pending in the Circuit Court of Cook County, Illinois' "

The defendant contends that this indictment is inadequate because it does not allege that the two previous indictments were for the same conduct. To establish such a requirement the defendant relies upon the following statement contained in *People v. Isaacs (1967), 37 Ill. 2d 205, 231:* "The salient requirement is that it allege the tolling of the Statute of Limitations on the basis of the pendency of prior proceedings against the same defendants for the same conduct." This statement in the *Isaacs* case was dictum. There is no requirement that identity of the two indictments be alleged in the most recent one, and indeed such an allegation of identity would be a legal conclusion. "The vital condition of identity of offenses charged in the two indictments can be established not only by a comparison of the indictments but by parol evidence." *People v. Hobbs (1935), 361 Ill. 469, 470.*

The defendant further contends with respect to the count charging intimidation that the first two indictments failed to charge that the threat was made with the intent to cause the victim to perform an act. The defendant contends that because of this deficiency the first two indictments did not allege the same conduct as the third indictment and therefore the requirements of section 3–7(c) of the Criminal Code were not complied with. What the statute requires is that the pending prosecution which is relied upon to toll the statute of limitations must involve the same conduct that is charged in the indictment upon which the defendant is tried. This means the kind of

identity which will suffice to inform the defendant of the circumstances of the offense with which he is charged in such a way as to permit him to prepare his defense. Whether the earlier indictments adequately charged an offense is not determinative. As the court stated in the *Hobbs* case: "A prosecution under a second indictment after the limitation period had passed is not barred because a prior, though bad, indictment charging the same offense had been returned or filed within the period of limitation. (*Swalley v. People, 116 Ill. 247; People v. Buckner, 281 id. 340.*) The Criminal Code does not require that the indictment quashed or set aside be a valid one in order to toll the running of the statute. (*People v. Buckner, supra.*)" 361 Ill. at 469-70.

The broadest of the defendant's attacks upon the substantive sufficiency of the indictment is the assertion that the usury statute is invalid because it is not uniform in its operation, constitutes special legislation in violation of section 22 of article IV of the Illinois Constitution of 1870, and therefore deprives him of due process of law.

Sections 39—1, 39—2 and 39—3 of the Criminal Code provide:

"39—1. Any person commits criminal usury when, in exchange for either a loan of money or other property or forbearance from the collection of such a loan, he knowingly contracts for or receives from an individual, directly or indirectly, interest, discount or other consideration at a rate greater than 20% per annum either before or after the maturity of the loan.

39—2. A person convicted of criminal usury shall be fined not to exceed $1,000 or imprisoned in a penal institution other than the penitentiary not to exceed one year or in the penitentiary from one to five years, or both fined and imprisoned.

39—3. This Article does not apply to any person licensed under the Consumer Finance Act, approved July 10, 1935, and heretofore or hereafter amended or the Consumer Installment Loan Act, approved August 30, 1963, as heretofore or hereafter amended, or to any loan

permitted by Sections 4 and 4a of 'An Act to revise the law in relation to the rate of interest and to repeal certain acts therein named', approved May 24, 1879, as heretofore or hereafter amended, or by any other law of this State." Ill. Rev. Stat. 1967, ch. 38, par. 39—1, 39—2, 39—3.

The attack is aimed at the exceptions stated in section 39—3. They are of two kinds, one based upon the identity of the lender and the other upon the identity of the borrower. As to lenders, the General Assembly has set apart for separate treatment those who are required to be licensed by the State, to keep prescribed records which are open to scrutiny, and to make prescribed reports. As to borrowers, section 4 of the Interest Act provides: "It is lawful to charge, contract for, and receive any rate or amount of interest *** with respect to the following transactions: (a) Any loan made to a corporation; (b) Advances of money *** upon warehouse receipts ***; (c) Any business loan to a business association or copartnership or to a person owning and operating a business as sole proprietor or to any persons owning and operating a business as joint venturers, *** or to any trustee owning and operating a business ***." (Ill. Rev. Stat. 1967, ch. 74, par. 4.) The line here is drawn between loans to those who are engaged in business and loans to those who are not. We see no unreasonable discrimination in the classifications that the legislature has established. The evidence in this case does not suggest that the defendant was a licensed lender or that he was making a business loan.

The defendant next challenges the intimidation count of the indictment because it fails to allege an essential element of the offense. Section 12—6 of the Criminal Code provides:

"A person commits intimidation when, with intent to cause another to perform or to omit the performance of any act, he communicates to another a threat to perform without lawful authority any of the following acts:

(1) Inflict physical harm on the person threatened or any other person or on property; ***." Ill. Rev. Stat. 1967, ch. 38, par. 12—6.

The indictment in this case charged:

"Sam Gallo committed the offense of Intimidation in that he, with the intent to cause Donald Doyle to perform an act, did communicate to Donald Doyle a threat to inflict physical harm on the person of Donald Doyle in violation of Chapter 38, Section 12—6(a—1) of the Illinois Revised Statutes 1967."

The defendant argued that the conduct alleged would be unlawful only if done without lawful authority, and that because the indictment does not contain an allegation to that effect it does not charge an offense. The doubts that previously existed as to the necessity of alleging in an indictment that an act was done "without lawful authority" were resolved in *People v. Harvey (1973), 53 Ill.2d 585,* and the defendant's contention is denied.

The defendant argued that he was not proved guilty of intimidation because the evidence did not establish that his statement to the victim had "a reasonable tendency to 'coerce,' " or that it was "an 'expression of an intent to act.' " He derives this contention from *Landry v. Daley (N.D. Ill. 1968), 280 F. Supp. 938,* in which a three-judge district court made the following statement: "The State of Illinois unquestionably has a legitimate interest in protecting persons from coercion by threats, even though expression is involved. *** However, *** [it] has no legitimate interest in proscribing as intimidation statements that have no reasonable tendency to coerce or statements which, although alarming, are not expressions of an intent to act." (280 F. Supp. at 961.) It then went on to hold that implicit in the word "threat," as used in the statute, is the requirement "that the expression in its context have a reasonable tendency to create apprehension that its originator will act according to its tenor." 280 F. Supp. at 962.

In this case Doyle testified that in late November, 1968, the defendant telephoned him and "[h]e told

me *** [he'd] break my legs in three or four places unless I come up with some money. He also told me that he'd send the boys, the west side boys, over to the Daily News garage, because that's where he knew I shot craps, unless I come up with some money." Doyle stated that after he received this call he had his telephone number changed, and that after receiving another telephone call from the defendant in February of 1969, he became scared and reported the entire incident, including his own thefts from his employer, to the State's Attorney's office. In the context in which it was made, the defendant's statement was an expression of an intent to act and it had a reasonable tendency to coerce. The defendant's contention must therefore fail.

The defendant next contends that the trial court improperly forced him to trial over his request for a continuance, and that in doing so, in effect granted the prosecution's motion for a substitution of judges which had previously been denied. The preliminary matters in this case were heard by Judge Robert J. Downing, who had previously heard a case, similar in nature to this one, in which Donald Doyle was the State's principal witness. In that case Judge Downing apparently disbelieved Doyle's testimony, and apparently for this reason the State moved for a substitution of judges. The motion was denied. The case had been continued to July 28, 1970, but on that date Judge Downing was on vacation and Judge Walter J. Kowalski was sitting in his place. The defendant requested a continuance, saying that he was not prepared for trial and that to proceed to trial at that time would, in effect, grant the State's motion for a substitution of judges. The charges against the defendant had been pending for well over a year, and Judge Downing had previously denied the defendant's request for a continuance. After hearing argument the court continued the case for two days and informed defense counsel that if he brought in an affidavit at that time the court would reconsider the motion.

Defense counsel did file an affidavit on July 30, 1970, but after a discussion with the judge he stated that he would be ready for trial the next day. When court convened on July 31, 1970, defense counsel did not indicate in any way that he was unprepared for trial or that he objected to proceeding to trial at that time. He also made no attempt to show that the defendant could not get a fair trial from Judge Kowalski. It does not appear that the trial judge abused his discretion in refusing a further continuance.

The defendant's next contentions center around two articles concerning the defendant and this case, which appeared in a Chicago newspaper. The first appeared after both sides had finished presenting their evidence, and before the case had been argued. It referred to "all this talk about Sam Gallo and his juice loan operation," quoted certain questions and answers during Gallo's cross-examination in the present case, and referred to an earlier preliminary hearing in a bribery case involving him in which the trial judge hearing the present case had found that "the police bribe story was 'incredible' and set Sam free." The article concluded, "I wonder who the judge believes this time." Prior to closing arguments the defendant's attorney moved for a mistrial on the basis of this article. The trial judge acknowledged that he had read the article, but denied the motion for a mistrial, stating:

> "The Court: And I don't accept it as any intimidation or I don't consider it prejudicial in any way at all. I feel it was a mistake on the part of Mr. Fitzpatrick, with a trial pending in this court, to have an article of that nature published. As a matter of fact, I even feel that it is contemptuous in the existing case. But, nevertheless, I don't feel it is prejudicial. I don't have a jury. And I wouldn't grant a mistrial on that basis."

We see no reason to disturb this ruling. It is, however, appropriate to say that this type of comment could impair the constitutional right of a defendant to a fair trial. See, *People v. Cole (1973), 54 Ill.2d 401.*

The second article appeared in the same newspaper after the defendant had been found guilty and sentenced. It quoted the trial judge as saying to the author of the first article: "An article like that puts a judge on the spot, \*\*\*. It didn't prejudice my mind, though, because I had already made it up before reading your article." After this article appeared the defendant filed a petition to vacate the judgment on the ground that the trial judge had made his decision before hearing the closing arguments and asked for a hearing on the petition before another judge. The trial court dismissed the petition.

The defendant now renews the contention that he was denied a fair trial because the trial judge had determined his guilt before he heard the arguments of counsel. He also contends that the trial court erred in failing to conduct a hearing. We do not agree. No formal hearing was required. It would be difficult for the trial judge to avoid reaching tentative conclusions on the facts before he heard the arguments, and if he did so, we see no error. No finding had been announced.

The defendant also complains that the court interrupted defense counsel's closing argument. An examination of the record shows that there were numerous questions from the bench and frequent discussions between defense counsel and the trial judge, but it also shows that defense counsel was permitted to make a full and complete closing argument without any restrictions by the trial judge. The defendant's contention is without merit.

The defendant next urges that because of the lack of credibility of the State's principal witness, Donald Doyle, the defendant was not proved guilty beyond a reasonable doubt. Doyle was impeached several times by prior inconsistent statements and he was an admitted thief and liar who was often deeply in debt. All this was made known to the trial judge, however, who believed Doyle's testimony. That testimony was corroborated in several

respects by the testimony of Officer Masnjak. The evidence was not so unsatisfactory as to cause us to disturb the finding of the trial judge. See, *People v. Walcher (1969), 42 Ill.2d 159, 165; People v. Fox (1962), 24 Ill.2d 581, 586.*

The defendant next contends that he was denied a fair trial because the trial judge limited his cross-examination of Doyle. "As a general rule the latitude to be allowed in cross-examination of witnesses rests largely in the discretion of the trial court. Such cross-examination should be kept within fair and reasonable limits, and it is only in a case of clear abuse of such discretion, resulting in manifest prejudice to the defendant, that a reviewing court will interfere." (*People v. Halteman (1956), 10 Ill.2d 74, 86;* see also, *People v. Nugara (1968), 39 Ill.2d 482, 487-88, cert. denied, 393 U.S. 925, 21 L. Ed. 2d 261, 89 S. Ct. 257.*) We have examined the record and we find that the cross-examination was not unduly restricted.

Finally, the defendant relies on section 7—12 of the Criminal Code (Ill. Rev. Stat. 1967, ch. 38, par. 7—12), and asserts that in receiving the usurious interest payments he was entrapped by the police because they supplied the funds which Doyle used to make the payments. But it is clear from the fact that the defendant told Doyle at the outset that the interest would be $33 per week that the defendant then had the intent to commit criminal usury and that when he received the interest payments he was not induced or lured into committing an offense which he would not otherwise have committed. (See, Ill. Rev. Stat. 1967, ch. 38, par. 7—12; *People v. Hall (1962), 25 Ill.2d 297, 300, cert. denied (1963), 374 U.S. 849, 10 L. Ed. 2d 1069, 83 S. Ct. 1912.*) His defense of entrapment must therefore fail.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*