THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LARRY DIMOND, Defendant-Appellant.

Third District   No. 76-196

Opinion filed November 4, 1977.

STOUDER, J., dissenting.

Robert Agostinelli and Larry Mackey, both of State Appellate Defender's Office, of Ottawa, for appellant.

William D. Henderson, State's Attorney, of Macomb (James E. Hinterlong and Linda M. Vodar, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Defendant Larry Dimond appeals from a conviction of burglary in the Circuit Court of McDonough County following a jury trial. Defendant was sentenced to a term of 1 to 3 years imprisonment.

In a brief prepared by the State Appellate Defender defendant contends that his right to effective cross-examination was denied by the trial court's limitation of defense counsel's inquiry into possible bias and motive of the State's accomplice witness. In the supplemental brief, submitted by defendant, defendant also contends he was denied his right to a speedy trial.

On January 8, 1974, defendant was arrested and charged by information with two counts of burglary (Ill. Rev. Stat. 1975, ch. 38, par. 19—1). At an arraignment on April 3, 1974, defendant tendered a plea of not guilty to the charges and requested trial by jury. On March 1, 1974, the McDonough County grand jury had returned an indictment charging defendant with two counts of burglary. Count I specified a burglary by defendant on January 8, 1974, of a house owned by Ralph Cordell and named as co-defendants in such burglary Gary Fisher and Paul Ferrin. Count II charged defendant alone with the burglary of a house of Katherine Bainter on January 6, 1974.

November 18, 1974, the case was called for trial. Defendant moved to dismiss on the ground that he had been denied a speedy trial. The trial court denied the motion. The State moved that Paul Ferrin, one of the co-defendants named in Count I of the indictment, be granted immunity. The trial court granted the State's motion, apparently over objection of defendant. The State was then permitted to elect to proceed to trial first on Count I of the indictment, and on November 19, 1974, testimony was heard from the State's first witness. The trial on Count II, however, was never completed for the reason that on November 21, 1974, defendant, pursuant to negotiations involving other charges pending against him, tendered a guilty plea to one of the counts of the indictment. There was an understanding that dismissal would be made of another count. The trial court entered its conditional concurrence in defendant's guilty plea, but on January 28, 1975, the trial court withdrew its concurrence to the plea agreement due to reservations by the judge concerning the number of charges which were made part of the negotiations. On March 12, 1975, defendant formally withdrew his guilty plea, and the trial judge recused himself on his own motion. On April 30, 1975, defendant's case was

assigned to another judge for trial to commence on May 19, 1975, but the trial was not held on that date.

On March 15, 1976, defendant's case was set for trial on April 5 or 6, 1976. On the date set for trial, defendant moved to dismiss the prosecution on the ground that he had been denied his right to a speedy trial. That motion was denied by the trial court. The cause proceeded to trial on Count I of the indictment.

Two witnesses testified for the State. The first witness, Ralph Cordell, testified that on January 8, 1974, he discovered that a farmhouse owned by him had been broken into, and he reported the break-in to the sheriff. The State's second witness was Paul Ferrin, who, originally, had been named as co-defendant in the Cordell burglary. After the jury had been withdrawn and the trial court had granted the prosecutor's motion for immunity as to witness Ferrin, Ferrin testified that after Ferrin, Fisher and defendant had left a bar at approximately 11 p.m. on January 7, 1974, they observed a farmhouse near Colchester, Illinois, which appeared unoccupied, and that all three men, after breaking a window in the front door, entered the house and removed a number of items, including a couple of guns. Ferrin also testified on direct examination that he had received immunity from prosecution on this charge in return for his testimony.

On cross-examination, Ferrin acknowledged that he had been charged with the same offense for which defendant was on trial, and also that he had first been offered immunity in the case in November 1974. Defense counsel then asked Ferrin if he had also been charged with possession of barbiturates. The prosecutor objected and arguments were then heard outside the presence of the jury. Defense counsel developed an offer of proof that on March 3, 1973, Ferrin was charged with possession of less than 200 grams of barbiturates; that on May 2, 1973, pursuant to the provisions of section 410 of the Controlled Substances Act (Ill. Rev. Stat. 1975, ch. 56½, par. 1410). Ferrin was placed on 2 years probation without entry of conviction in accordance with the terms of that particular paragraph of the Controlled Substances Act; that on June 12, 1975, Ferrin was released from probation and that Ferrin had been offered immunity in the present case while he was still on the type of probation provided for under section 410 of the Controlled Substances Act. The trial court sustained the State's objection to the cross-examination with respect to the charge as to possession of barbiturates and pointed out that under the provisions of section 410 of the Controlled Substances Act there was no adjudication of guilt.

Defendant rested his case without presenting witnesses. At the conclusion of the instruction conference, the State moved to dismiss Count II of the indictment. Since a bench trial had been started on Count

II in November 1974, the trial court dismissed Count II with prejudice. The jury returned a verdict of guilty as against defendant and, as we have noted, the defendant was sentenced to a term of 1 to 3 years imprisonment.

■■ The first issue on appeal raised by defendant is his contention that he was denied the right to effective cross-examination by the court's limitation of his inquiry into the possession of barbiturates. On the issue of the latitude to be allowed on cross-examination, the Illinois Supreme Court stated in *People v. Gallo* (1973), 54 Ill. 2d 343, 356, 297 N.E.2d 569:

" 'As a general rule the latitude to be allowed in cross examination of witnesses rests largely in the discretion of the trial court. Such cross examination should be kept within fair and reasonable limits, and it is only in a case of clear abuse of such discretion, resulting in manifest prejudice to the defendant, that a reviewing court will interfere.' "

In the instant case the testimony of Paul Ferrin clearly indicated that he had received immunity in return for his testimony against defendant. In cross-examination, defense counsel was allowed to establish that Ferrin had been charged with the same offense for which defendant was on trial. The trial court limited the cross-examination of Ferrin when defense counsel attempted to inquire into a previous charge of possession of barbiturates against Ferrin where there was no finding of guilt or a conviction. We note that at the time Ferrin testified against defendant, and when he was granted immunity in the instant case, Ferrin's term of probation on the charge involving barbiturates had terminated.

■■ It is contended by the State that since Ferrin's probation ended prior to his testimony at trial, any bias or motive to testify falsely arising therefrom had also ended prior to Ferrin's testimony at trial, and the only motivation to testify in that fashion existed from the fact that he was granted immunity on the charge involving the same offense for which defendant was being tried. In view of the record of guilt in this case and the fact that Ferrin was clearly shown to have been offered immunity in his testimony, the limitation of the cross examination of Ferrin, in any event, would not justify a reversal. The jury was therefore properly aware of Ferrin's motivation in testifying as a means of assessing and evaluating the testimony of Ferrin. Only in the case of clear abuse of discretion, resulting in manifest prejudice to a defendant, should a reviewing court interfere with the trial court's exercise of discretion (see *People v. Gallo* (1973), 54 Ill. 2d 343, 297 N.E.2d 569, *People v. Jones* (1st Dist. 1975), 34 Ill. App. 3d 103, 339 N.E.2d 485). In view of the fact that the jury already understood the granting of immunity and the potential motivation of Ferrin in testifying for the State and also by reason of the fact that the witness Ferrin had completed his probation on the barbiturate charge and

also in view of the instruction given to the jury in the cause as to the accomplice testimony, defendant was not manifestly prejudiced by the court's limitation on cross-examination. We do not find that there was manifest prejudice to defendant under the facts and circumstances of this case.

■■ In the supplemental brief defendant further argues that he was denied his statutory and constitutional rights to a speedy trial (Ill. Rev. Stat. 1975, ch. 38, par. 103—5(b)). That Act provides that:

"Every person on bail or recognizance shall be tried by the court having jurisdiction within 160 days from the date defendant demands trial * * *."

In the instant case defendant was free on bond during almost the entire period prior to trial. There is no evidence that defendant ever demanded trial so as to commence the running of the 160-day period. In *People v. O'Shea* (1st Dist. 1975), 26 Ill. App. 3d 826, 828, 326 N.E.2d 230, the appellate court correctly outlines the applicable rule where it says:

"A demand to the court is necessary to commence the running of the 160-day period, and it is imperative that such demand be of record; it is not enough that a defendant allege that the record fails to reflect such demand, since such allegation is self-serving and cannot override the verity of the record."

Defendant also contends that his request for a jury trial constituted a demand for a speedy trial. The Illinois Supreme Court, however, has answered this contention in *People v. Baskin* (1967), 38 Ill. 2d 141, 145, 230 N.E.2d 208, where the court states:

"The original request for a jury trial cannot be considered as a demand for immediate trial, but only a demand that when trial was held it would be before a jury."

We have noted a case cited by defendant, *People v. Yates* (4th Dist. 1974), 17 Ill. App. 3d 765, 308 N.E.2d 679, which, without explicit consideration of the issue, may have equated the jury demand with a demand for a speedy trial, but we conclude that the supreme court opinion in *People v. Baskin* (1967), 38 Ill. 2d 141, 230 N.E.2d 280, is binding as controlling precedent and is also the better reasoned opinion. We conclude that defendant's request for a jury trial did not constitute a demand for a speedy trial.

■■ Defendant refers to a letter written by his attorney to the trial court and states that it constituted a demand for a speedy trial. While that letter is not a part of the record on appeal (we would not be able to base our determination on that letter (*People v. O'Shea* (1st Dist. 1975), 26 Ill. App. 3d 826, 326 N.E.2d 230), we have reviewed the letter, a copy of which was included with defendant's supplemental brief, and note that the letter is not in any way susceptible of interpretation as a demand for a

speedy trial, but is simply a recital of the fact that the defense attorney and the prosecutor would get together on some arrangement for disposition of the cases as against defendant.

■■ On the general consideration of the speedy trial issue, we have said in *People v. Joseph* (3d Dist. 1975), 33 Ill. App. 3d 315, 319, 337 N.E.2d 110:

> "The United States Supreme Court has held that whether or not a defendant has been denied a speedy trial is a question dependent upon four factors which must be evaluated and balanced on the facts of each case. (*Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182, (1972).) The factors are: length of the delay, reason for the delay, whether or not defendant demanded trial, and prejudice accruing to the defendant."

In the instant case defendant was at liberty on bail, and trial on one count of the indictment commenced within approximately 7 months of defendant's indictment, but was not completed by reason of the fact that defendant tendered a guilty plea. That guilty plea was eventually rejected by the trial court. We note that the delay in the trial of this case resulted primarily from defendant's attempt to enter a guilty plea to part of the indictment. So far as the record is concerned defendant made no effort to assert his right by demanding a speedy trial. He was actually on notice that a speedy trial demand was necessary to initiate the running of the statutory period, when his motion to dismiss was denied in November of 1974. Defendant never made a demand for a speedy trial, and there is no showing in the record of prejudice to the defendant due to the delay in the ultimate trial of the cause. We conclude therefore that there is no reversible error based on the speedy trial issue as presented in this court.

For the reasons stated, therefore, the judgment of the Circuit Court of McDonough County is affirmed.

Affirmed.

BARRY, J., concurs.

Mr. JUSTICE STOUDER, dissenting:

I must respectfully dissent from my colleague's opinion. The defendant should have been allowed to establish all the benefits the witness received in exchange for his testimony at trial. I do agree with the majority's disposition on the defendant's claim of denial of his right to a speedy trial.

It is important to delineate the precise issue involved with defendant's claim that he has been denied his right to effective cross-examination. I would agree that it would be improper to use a witness' plea of guilty and probation under section 410 of the Controlled Substances Act (Ill.

Rev. Stat. 1975, ch. 56½, par. 1410) for purposes of impeaching the witness by means of a prior conviction. But such is not an issue in this case. What is at issue is whether defendant was entitled to establish that the State had withdrawn or dismissed an earlier petition to revoke the witness' probation as part of the agreement between the State and the witness. Such a fact would establish further motive or bias in addition to Ferrin's having also received immunity from prosecution. A defendant is entitled to have the jury know not only the fact that lenient treatment has been given, but also its extent as well.

As indicated by the majority, Ferrin received immunity from prosecution on November 18, 1974. On that date the witness was still on probation under section 410 and prior to this time, the State had filed a petition to revoke his probation based upon Ferrin's participation in the burglary of the Cordell house. The general rule on cross-examination of accomplice witnesses was well stated in *People v. Maggio*, 324 Ill. 516, 529, 155 N.E. 373, 378, and has been reaffirmed in more recent opinions.

> "The testimony of an accomplice is competent evidence, and, although uncorroborated, may be sufficient to sustain a conviction if it is of such a character as to prove guilt beyond a reasonable doubt. It is always, however, subject to grave suspicion and should be acted on with great caution.[Citations.] A defendant against whom an accomplice in the crime testifies is therefore entitled to cross-examine such witness and interrogate him freely as to his motives, bias and interest, his relation to the crime and the persons connected with it, and any matters which tend to impeach his fairness or impartiality." (Accord, *People v. Norwood,* 54 Ill. 2d 253, 296 N.E.2d 852, *People v. Baker,* 16 Ill. 2d 364, 158 N.E.2d 1.)

Though the scope of cross-examination is within the trial court's discretion, as is correctly stated by the majority, "the widest latitude should generally be allowed the defendant in cross-examination for the purpose of establishing bias." (*People v. Mason,* 28 Ill. 2d 396, 403, 192 N.E.2d 835, 838-39.) I believe application of these principles clearly requires that defendant should have been allowed to cross-examine Ferrin concerning the petition to revoke his probation.

In deciding adversely to defendant's claim of error, the majority has attributed certain significance to the fact that the witness' probation was over at the time of trial and therefore the State could no longer use revocation of probation as a means to secure the witness' cooperation. I believe such to be erroneous. The mere fact that leniency or benefits have already been conferred upon a witness may lessen its detrimental affect on the witness' credibility, but it cannot be the basis for excluding cross-examination as to the existence of leniency or benefits received.

In *People v. Bote*, 376 Ill. 264, 33 N.E.2d 449, an accomplice pleaded guilty for his participation in the alleged offense charged against defendant and also signed a confession. Defendant attempted to prove on cross-examination that after the witness had signed a confession, he received different kinds of food from other prisoners, and also attempted to prove that after the witness pleaded guilty, he was not taken into custody nor locked up in the county jail. The court held that it was error to limit defendant's cross-examination. In *People v. Garrett*, 44 Ill. App. 3d 429, 358 N.E.2d 364, defendant attempted on cross-examination to elicit from a police officer that a state's witness had been helped financially before trial and that the defendant's mother had made complaints about the witness. In holding that error had been committed in limiting the cross-examination, the court stated:

> "The jury was entitled to know the witness' past and current relationship with the police." 44 Ill. App. 3d 429, 438, 358 N.E.2d 364, 371.

In *People v. Norwood*, 54 Ill. 2d 253, 296 N.E.2d 852, a juvenile witness for the State was an accomplice to the defendant in an armed robbery which resulted in the robbery victim being shot and killed. Defense counsel sought to show that the witness had received lenient treatment, both for his involvement in the homicide with defendant and for past offenses for which he was in custody of the State. The court upheld defendant's claim that he was entitled to elicit on cross-examination whether the witness' testimony was attributable to lenient treatment which he had received or had been promised. From the reasoning in these cases, I believe the fact that the witness' probation was no longer subject to being revoked at the time his testimony was given does not prevent inquiry into why the petition to revoke was not acted upon or was withdrawn by the State.

The primary reason advanced by the trial court for limiting cross-examination into the area of the State's petition to revoke the witness' probation, was that under a section 410 proceeding there was no adjudication of guilty and hence the plea of guilty cannot be used for impeachment. While the majority have refrained from discussing the propriety of the trial court's reasoning, I believe it merits discussion.

Neither the fact that there has been no judgment of conviction nor the fact that the cross-examination may reveal to the jury the basis for the section 410 probation should limit defendant's right to cross-examination the witness as to any benefits he received in exchange for his testimony. Both the United States and Illinois Supreme Courts have ruled that it is permissible to cross-examine a witness about prior arrests or criminal misconduct where the witness' present testimony may be motivated by hopes of lenient treatment in the other proceeding. Hence, the general

rule against admitting prior criminal misconduct does not prevent the defendant from showing the witness' bias because of expectation of lenient treatment in the other proceeding. In *People v. Norwood*, 54 Ill. 2d 253, 296 N.E.2d 852, the court held that section 2—8 of the Juvenile Court Act (Ill. Rev. Stat. 1969, ch. 37, par. 702—8) did nor bar disclosure of juvenile records of a witness in so far as they might be relevant to the defendant's claim that the witness' testimony was attributable to lenient treatment which he had received or had been promised. If cross-examination as to bias or motive for testimony may be conducted even though such an inquiry may reveal nonpublic juvenile records, then so too should cross-examination into bias be permitted which might incidentally reveal a section 410 probation or the events which culminated in that probation.

The defendant in this case should have been allowed to cross-examine the witness to show the reason why the petition to revoke probation was not acted upon or was withdrawn by the State after the witness had agreed to testify.

While it is unclear whether the majority position is founded upon the absence of error or upon the lack of reversible error, I believe the limitation of defendant's cross-examination of Ferrin was both error and reversible error.

Of crucial significance in determining whether reversible error has been committed is the extent to which the defendant was prejudiced by the error. I believe that when the sole evidence which connects a defendant to the commission of a criminal offense is the testimony of an accomplice and cross-examination of the accomplice as to bias or motive is improperly limited, then defendant suffers prejudice which can be remedied only by a new trial.

The defendant in *People v. Whitehead*, 35 Ill. 2d 501, 221 N.E.2d 256, was improperly prevented from impeaching one of the State's most important identification witnesses. Recognizing that the identification of the defendant was a crucial issue to a trial, the court found that the error was prejudicial and ordered a new trial. In *People v. Norwood*, 54 Ill. 2d 253, 296 N.E.2d 852, the court found that error was committed when defendant was prevented from conducting proper cross-examination of a witness and since the only person who implicated the defendant was that witness, the court ordered a new trial. In *People v. Jackson*, 2 Ill. App. 3d 297, 275 N.E.2d 737, defendant attempted to use a prior inconsistent statement to impeach the credibility of a police officer to whom the defendant had allegedly made an inculpatory statement. Recognizing the importance of the inculpatory statement and hence the credibility of the officer, the court held that the error prejudiced the rights of the defendant and a new trial was ordered.

In the instant case the sole evidence connecting the defendant to the criminal offense was Ferrin's testimony. If the jury disbelieved Ferrin's testimony, there was no evidence from which defendant could be convicted. Hence, preventing defendant from conducting proper cross-examination prejudiced defendant's rights to a fair trial and the cause should be reversed and remanded for a new trial.