THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JESUS GARCIA, JR., Defendant-Appellant.

First District (2nd Division)    No. 80-179

Opinion filed March 31, 1981.

Donald Thomas Bertucci, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Defendant Jesus Garcia, Jr., was charged by indictment with the aggravated kidnapping (Ill. Rev. Stat. 1977, ch. 38, par. 10—2) and murder (Ill. Rev. Stat. 1977, ch. 38, par. 9—1) of 11-year-old Roger Myers.[1] Defendant filed motions to quash his arrest and to suppress statements and other evidence which resulted therefrom. The trial court denied these motions. A stipulated bench trial followed. The trial court acquitted

---

[1] The indictments named defendant, Donald Patrick Owens, and Jerry J. Kavinsky as codefendants. The cases were severed for trial. Kavinsky was convicted of murder and aggravated kidnapping. This court recently affirmed that conviction. *People v. Kavinsky* (1980), 91 Ill. App. 3d 784, 414 N.E.2d 1206.

defendant on the murder charges but convicted him of aggravated kidnapping. Defendant was sentenced to a prison term of 15 years.

This appeal focuses upon the trial court's denial of defendant's motions to quash the arrest and to suppress evidence. Defendant contends that (1) his warrantless arrest was illegal in that (a) the arresting officers lacked probable cause, and (b) the warrantless arrest in his home violated his fourth amendment rights; (2) all statements made by him following his arrest as well as other evidence, including the *corpus delicti*, must be suppressed as fruits of that allegedly illegal arrest; and (3) all statements must be suppressed since they were allegedly given in return for a promise of immunity from prosecution which was not kept.

For the sake of clarity, those facts which specifically relate to the issues raised will be set forth in the discussion thereof. The facts related to the crime itself have been set forth in detail in this court's opinion in the appeal of defendant's codefendant, Jerry Kavinsky (see footnote 1), and will only be given summary treatment here.

On March 2, 1978, defendant drove Jerry Kavinsky, Donald Owens, Paul Pennock, and Roger Metzger to Westmont, Du Page County, Illinois, to commit some burglaries. They eventually arrived at the Myers family residence. Believing the home to be unoccupied at the time, the group broke in. Once inside, one of the party discovered the presence of Roger Myers, who was hiding under a bed. Jerry Kavinsky determined that it would be necessary to kill Myers in order to prevent his identification of the burglars.

Myers was taken from the house and eventually driven to a forest preserve area in Willow Springs, Cook County. Defendant was the driver of the car. Kavinsky and Owens took Myers into the forest preserve and emerged later without him. Owens told defendant that Kavinsky had stabbed the boy to death. Roger Myers' body was found by the police with the assistance of defendant on April 9, 1978.

## I.

Defendant contends that his warrantless arrest was illegal in that (a) the arresting officers did not have reason to believe that defendant had committed a crime and therefore lacked probable cause to arrest him, and (b) the entry into his home to arrest him was unreasonable in the absence of a warrant, thus violating his fourth amendment rights.

## A.

Defendant first asserts that the arresting officers lacked probable cause to arrest him.

■■ Once evidence is submitted by a defendant which shows that he was doing nothing unusual when arrested by police who lack an arrest

warrant, the defendant has made a *prima facie* case that the police lacked probable cause. Although the burden of proof of the issue remains with defendant throughout a motion to quash an arrest on this ground, in such circumstances the burden of going forward with the evidence shifts to the State. It must show through evidence presented on the record that the police had reasonable grounds to believe that the defendant had committed a crime. *People v. Martin* (1977), 46 Ill. App. 3d 943, 947, 361 N.E.2d 595, *appeal denied* (1977), 66 Ill. 2d 634.

It is undisputed in this case that defendant was doing nothing unusual when arrested in his home by police who possessed neither an arrest nor search warrant. In order to meet the thus shifted burden of presenting evidence, the State brought to the witness stand one of the arresting officers as well as another policeman who had provided the former with some information regarding defendant.

Officer Peter Tanke of the Du Page County sheriff's office arrested defendant at his parents' home in Chicago on the morning of April 9, 1978. Tanke was ordered to make the arrest by his superior officer, who did not testify in the case. Tanke related that this arrest order was in part the result of certain information he had received from a fellow officer, William Glinski, who also did not take the witness stand. Glinski told the witness that he had interviewed a Roland Williams. Williams never testified during this case. In Tanke's own words, Glinski told Tanke that Williams had told Glinski that "Jessie Garcia was the driver, and he had driven to the location over in a wooded area where the body of Roger Myers was left." Glinski informed Officer Tanke that Jessie Garcia was a companion of a Jerry Kavinsky. Tanke gave no additional information in his testimony concerning Williams' identity, the source of Williams' information, the identity of Jerry Kavinsky, the relationship of "Jessie Garcia" to defendant, or any other background information to serve as a foundation for the reliability of the matters related.

Tanke further testified that after he talked to Glinski, he phoned Officer Vincent Musial of the Westmont Police Department. Musial gave Tanke the address of a "Jessie Garcia." This occurred at about 10:30 p.m. on April 8, 1978.

Tanke next related that he and his partner had proceeded to Chicago on the morning of April 9, 1978. They stopped at an area police station to report their planned activities and to request assistance. Tanke, his partner (Paul Dungan), and two Chicago policemen proceeded to defendant's residence. Defendant's mother answered the door. Tanke asked for Jessie Garcia and was shown to defendant's room by his mother. There, defendant was told that he was under arrest.

Officer Musial was also called to testify. He related that he was conducting a *narcotics* investigation involving Jerry Kavinsky and de-

fendant. On March 7, 1978, he had stopped near a disabled car and called for assistance. Musial waited for the assisting car to arrive and then watched the proceedings. Kavinsky was in the back seat, Roland Williams was a passenger, and defendant was the driver. The officer who arrived to assist the occupants obtained defendant's home address when running a driver's license check on him.

On March 15, 1978, Musial knew that another officer had stopped a car for failing to display license plates. The driver of that car was defendant. Kavinsky, Williams, and Donald Owens were in the car.

On April 8, Musial spoke to Officer Tanke. He told the latter that "Jessie Garcia" was a known associate of Jerry Kavinsky and gave Tanke defendant's address and date of birth. This occurred at about 10:30 p.m.

The State presented no further evidence at the hearing which was directed toward meeting its burden of coming forward with evidence that defendant's arrest was based upon probable cause. The hearing thereafter proceeded with the introduction of evidence concerning defendant's other motions aimed at suppressing evidence.

After receiving all evidence pertaining to each motion filed, the trial court proceeded to rule on the motions. Proper resolution of this appeal requires that we set forth a portion of the court's oral ruling. In analyzing the evidence presented on the motion to quash the arrest, the trial court noted:

> "We have Detective Tanke at the direction of this sargeant [*sic*] on the morning of April 9, 1978, on a Sunday morning, being directed to go to an address in Chicago, at which address is, in fact, the address of Jesus Garcia, the defendant, who sits before me today.
> It is not clear what information the sargeant [*sic*] may have had on the date in question, but as [*sic*] he never testified.
> It is, however, clear that the DuPage County officers in in [*sic*] possession of a statement of Roland Williams. That statement, I believe, having been given to Officer William Galinski [*sic*], if I recall the DuPage County Sheriff.
> During the course of which, *it was revealed as to the admissions made by Jerry Kavinsky to Roland Williams*, and was reported, thereafter, to the arresting officer." (Emphasis added.)

Later in the same soliloquy, the trial court stated:

> "Officer Tanke, therefore, having an address, a name, a name of a party, who had, in fact, been seen before in the presence of *Jerry Kavinsky, who had made an admission to a third party concerning this entire transaction*." (Emphasis added.)

The court proceeded to deny defendant's motion to quash the arrest, finding that there was probable cause to so act.

■■ ■ Initially, we find no reason to disagree with Officer Tanke's

reliance upon the statement made by Williams to Glinski, which the latter related to Tanke, on the basis that it constitutes double hearsay. It is undisputed that information which is hearsay may form the basis for probable cause to arrest. (*People v. Ford* (1977), 50 Ill. App. 3d 999, 1004, 366 N.E.2d 123, *appeal denied* (1977), 66 Ill. 2d 640.) Additionally, we note that the knowledge of one officer is the knowledge of all. (*People v. Hart* (1980), 88 Ill. App. 3d 484, 489-90, 410 N.E.2d 633.) Thus, any information which was known by Glinski from his conversation with Williams, even if not told to Tanke, could be considered by the trial court in determining whether there was probable cause, so long as such information was somehow placed in the record.

■■ Our examination of the record in his case convinces us, however, that only the testimony of Officers Tanke and Musial is relevant to the determination of whether there was probable cause to arrest.[2] Tanke's statement is, in essence, a recapitulation of information given to the police by informant Williams. We must therefore scrutinize the content of Williams' information as placed in the record.

■■■ In testing the validity of a determination that probable cause exists, the allegations which are proffered as supporting probable cause must satisfy a two-pronged test. The information presented must indicate both (1) the underlying circumstances establishing the reliability of the *person* providing the information, and (2) the underlying circumstances establishing the reliability of the *informant's conclusion* that the defendant was engaged in criminal activity. (See *Aguilar v. Texas* (1964), 378 U.S. 108, 114, 12 L. Ed. 2d 723, 729, 84 S. Ct. 1509, 1514; *People v. Fenelon* (1980), 88 Ill. App. 3d 191, 194, 410 N.E.2d 451; *People v. Odom* (1980), 83 Ill. App. 3d 1022, 1025-26, 404 N.E.2d 997.) In Illinois, the first prong of the *Aguilar* test is met where the informant is an ordinary citizen. (*People v. Hester* (1968), 39 Ill. 2d 489, 514, 237 N.E.2d 466, *cert. dismissed* (1970), 397 U.S. 660, 25 L. Ed. 2d 642, 90 S. Ct. 1408.) Absent contrary indications, one is presumed to be an ordinary citizen. (*People v. Isenberg* (1977), 52 Ill. App. 3d 426, 428, 367 N.E.2d 364.) Meeting the first prong in this way is especially accepted where the informant is a victim of the crime or an eyewitness to it. (See *People v. Martin* (1977), 46 Ill. App. 3d 943, 953-54; *People v. Mitchell* (1979), 68 Ill. App. 3d 370, 373-74, 386 N.E.2d 153, *appeal denied* (1979), 75 Ill. 2d 593; *People v. Kahl* (1978), 63

---

[2] The State argues that there is other evidence in the record which corroborates the testimony of the two officers and thus buttresses the trial court's finding of probable cause. It is true that evidence appearing at any stage of the proceedings below may serve as a basis for affirming a finding of probable cause if such evidence supports that finding. (*People v. Braden* (1966), 34 Ill. 2d 516, 520, 216 N.E.2d 808.) We have searched the record here and do not agree with the State's contention that such other corroborative evidence was presented. Therefore, the trial court's decision must stand or fall upon the two officers' testimony.

Ill. App. 3d 703, 707, 380 N.E.2d 487.) However, nothing in the cases in which the "ordinary citizen" presumption is applied disposes of the necessity that the second prong of the *Aguilar* test be met. Thus, the State must still show the underlying circumstances which led the informant to believe that the defendant was involved in a crime.[3] Information, though it comes from an ordinary citizen, cannot serve as a basis for a finding that probable cause exists where that information is purely conclusory and does not detail any of its underlying circumstances. See *United States v. Ventresca* (1965), 380 U.S. 102, 108-09, 13 L. Ed. 2d 684, 689, 85 S. Ct. 741, 746.

■■ After a detailed and exhaustive search of the record, we must conclude that the State has failed to meet the second prong of the *Aguilar* test with respect to Williams' information. The State failed to call Officer Glinski to testify, although it was he who had the actual discussion with the informant. Thus, any underlying circumstances known to Glinski but not to Tanke were absent from the record. The State also failed to call Williams. Nothing in the testimony of Tanke identifies the source of Williams' information. Tanke admitted that he was personally unfamiliar with Williams, and stated that his testimony was based entirely upon what Glinski had related to him. The trial court erred when it found, as indicated in the italicized findings quoted above, that the record in this case demonstrated that the source of Williams' information was Jerry Kavinsky. This fact was indeed made known in the *Kavinsky* case record, but was never made a part of the present defendant's hearing or trial record.

"In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." (*Spinelli v. United States* (1969), 393 U.S. 410, 416, 21 L. Ed. 2d 637, 644, 89 S. Ct. 584, 589.) Tanke's description of defendant's relationship to the Myers case is not of sufficient detail. Further, although the testimony of Officer Musial served to link defendant with both Kavinsky and Williams, this evidence did not sufficiently tie in those parties to the Myers case or demonstrate the source of Williams' information *so as to supply the deficiencies therein and demonstrate the existence of probable cause to arrest defendant.* (See *Spinelli v. United*

---

[3] We note that certain language in *People v. Perry* (1980), 81 Ill. App. 3d 422, 429, 401 N.E.2d 1263, *appeal denied* (1980), 81 Ill. 2d 597, *U.S. appeal pending* (1980), 49 U.S.L.W. 3444, could be read to state that the second step of the *Aguilar* test need not be met where the informant is an ordinary citizen. We do not believe that this decision intended such a reading. To the extent that it does, it should be distinguished.

*States* (1969), 393 U.S. 410, 415, 21 L. Ed. 2d 637, 642, 89 S. Ct. 584, 588-89.) Therefore, we find that the trial court erred in ruling that probable cause to arrest defendant had been demonstrated on the record in this case. Defendant's arrest was therefore illegal and must be quashed.

## B.

Defendant argues that his arrest violated his fourth amendment rights to be free from unreasonable seizure, as recently clarified by the Supreme Court's decision in *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371. Therein, it was held that the fourth amendment prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make an arrest, absent exigent circumstances.

As a consequence of our holding above, examination of this contention is made unnecessary. We would merely note that the record indicates that defendant's mother consented to the entry of the police into her home. As such, the *Payton* holding would be inapplicable to the present circumstances. Compare *People v. Bean* (1981), 84 Ill. 2d 64, 417 N.E.2d 608; *People v. Thompson* (1981), 93 Ill. App. 3d 995, 418 N.E.2d 112; *People v. Genus* (1979), 74 Ill. App. 3d 1002, 1013-14, 393 N.E.2d 1162.

## II.

Defendant claims that all statements made by him to police officers, as well as the *corpus delicti*, must be suppressed as fruits of his illegal arrest.

After his arrest at about 9:30 a.m. on April 9, 1978, defendant was taken to a Chicago police station by Du Page County sheriff's officer Paul Dungan and a Chicago policeman. Dungan testified that defendant was not questioned during the ride. Upon arrival at the station at about 10:30 a.m., defendant was placed in an interview room. At about 11:15 a.m., Dungan advised defendant of his *Miranda* warnings from a card. A conversation ensued, which lasted approximately 35 minutes.

Dungan then left the room and returned at noon with a statement form and a rights waiver form. Defendant was again given his rights, and he signed the waiver form. Defendant then wrote out a three-page statement. After completing the statement, defendant was told that his parents were at the station and wished to see him. He did not want to see them at that time.

Dungan then asked defendant if he would show the police where Roger Myers' body was. Defendant responded in the affirmative.

At about 1:30 p.m., Dungan and his partner, Tanke, left the station with defendant and transported him by car to the Du Page County sheriff's office. No conversation with defendant took place during the

45-minute drive. Upon arrival, defendant was placed in an interview room. Dungan had no further contact with him.

Officer Warren Wilkosz of the Du Page County sheriff's police joined with Officer Tanke and took defendant from the interview room to Tanke's car at about 2 p.m. Defendant was given his *Miranda* warnings. Defendant told the officers that he would take them to the place he had last seen Roger Myers. The parties drove around in the car until about 6 p.m.

On cross-examination, Wilkosz stated that defendant had given them directions using a map of the area prior to being taken to Tanke's car.

Officer George Weihofen testified that he had a conversation with defendant at the Du Page County sheriff's office at about 7 p.m. on April 9, 1978. A court reporter transcribed the conversation. The first four pages of this conversation were entered into evidence. The statements therein do not concern the facts of the crime itself.

Defendant testified that he was sleeping in his bedroom on April 9, 1978, when he was awakened by police officers. He was handcuffed and driven to a Chicago area police station. At the station defendant had a conversation with Officer Dungan. Dungan offered defendant a "deal": if he would give the police information, he would not be prosecuted. Defendant made a written statement concerning everything he knew about the Myers case. Defendant denied that he was ever read his rights at the station.

After finishing the statement, defendant was taken by car to the Du Page County sheriff's office. At that office, defendant was shown some maps and asked if he could remember the streets in the area. He responded that he would try. Defendant was then taken in a car for a drive in the area. They eventually came to the location where defendant's car had been stuck in the snow and where Kavinsky had taken Roger Myers out of the car. Police officers subsequently told defendant that they had located the body of Roger Myers near that scene.

Defendant was then taken back to the sheriff's office. Officer Weihofen questioned defendant, and the conversation was taken by a court reporter.

On cross-examination, defendant stated that the rights waiver form which contained his signature was not given to him until he arrived at the Du Page County sheriff's office. The content of the waiver form was hidden from his view when he signed it.

■■ ■ When a defendant is illegally arrested, evidence procured by exploitation of that illegal action will be suppressed. On the other hand, where such evidence is obtained by means sufficiently distinct from the illegality so as to be purged of that primary taint, suppression is unnecessary. (*Brown v. Illinois* (1975), 422 U.S. 590, 598-600, 45 L. Ed. 2d

416, 423-25, 95 S. Ct. 2254, 2259-60; *Wong Sun v. United States* (1963), 371 U.S. 471, 484-87, 9 L. Ed. 2d 441, 453-55, 83 S. Ct. 407, 415-17.) Whether evidence is free from taint must be decided on a case-by-case basis. No single fact is dispositive. Factors to be considered include (1) the presence or absence of *Miranda* warnings, (2) the amount of time which elapsed between the illegal arrest and the production of the evidence, (3) the presence or absence of intervening circumstances (such as the release of defendant on bail and his voluntary return to the police station to make a statement), and (4) the purpose and flagrancy of the official misconduct. *Brown*, 422 U.S. 590, 603-04, 45 L. Ed. 2d 416, 427-28, 95 S. Ct. 2254, 2261-62; *People v. Turner* (1976), 35 Ill. App. 3d 550, 568, 342 N.E.2d 158, *appeal denied* (1976), 63 Ill. 2d 554.

Since the trial court ruled defendant's arrest to have been made with probable cause, it never made an analysis of this facet of defendant's motion to suppress, concentrating instead on the allegation that the statements were given in return for a promise of immunity. In passing, the court did apparently note that if the arrest was in fact illegal, *Brown* would control.

■■ Our analysis of the above facts leads us to agree with the trial court's apparent position. We initially note that defendant was given *Miranda* warnings by the police at several junctures. Defendant does not dispute this conclusion in this appeal. As to the temporal proximity of defendant's arrest to the disclosures, the State argues that the initial statement, made within two hours of the arrest, should be considered sufficiently removed from the illegality so as to have the taint purged. In *Brown*, a statement made within two hours of arrest was suppressed. The State's assertion here lacks a logical foundation in light of the *Brown* holding. Further, the other statements made by defendant as well as the revelation of the location of the body all occurred within a 9-hour period following the arrest. The events unfolded in rapid-fire fashion. Defendant was constantly subjected to requests for information during the entire period, with the exception of the 45-minute ride from Chicago to Du Page County. We conclude that the entire day's revelations by defendant were made in close temporal proximity to the illegal arrest.

The State claims that the ride from defendant's house to the Chicago police station served as an intervening factor to break the causal chain between the arrest and defendant's giving of the statements. Analysis of the Supreme Court's intentions in delineating this factor for consideration in suppression cases indicates that a car ride alone is not the type of intervening circumstance envisioned. In *Brown*, a similar car ride was not considered sufficient to purge the taint. That holding cited *Johnson v. Louisiana* (1972), 406 U.S. 356, 365, 32 L. Ed. 2d 152, 161, 92 S. Ct. 1620, 1626, as an example of an intervening circumstance. In *Johnson*, the

defendant was brought before a magistrate following his arrest. The magistrate ordered him held in custody. Thereafter, the lineup which defendant sought to suppress as a fruit of the arrest was held. The Supreme Court noted that the magistrate's decision served to break the causal chain. Certainly, a simple car ride is not an intervening circumstance of similar weight.

Finally, the State argues that there was no official misconduct here. Defendant retorts that the arrest was investigatory and therefore, as in *Brown*, an example of misconduct. In our view, this record does not demonstrate the existence of any official misconduct in addition to the illegal arrest itself.

Consideration of the matters just noted leads us to conclude that the statements and the *corpus delicti* were obtained as a direct result of the illegal arrest. All this evidence was revealed within nine hours of nearly nonstop examination of defendant following the arrest. Nothing meriting serious consideration appears to have broken the causal chain. In light of the policy behind the exclusionary rule, the statements and the *corpus delicti* should have been suppressed as fruits of defendant's illegal arrest.

### III.

Defendant argues that his statements should have been suppressed as being involuntarily given in response to alleged promises of freedom from prosecution made by police officers.

In light of our holding in part II above, it is unnecessary for us to address this issue.

In sum, we find that the record in this case failed to adequately demonstrate the existence of probable cause to arrest defendant. His arrest should have been quashed, and all evidence including statements and the *corpus delicti* which were fruit thereof should have been suppressed. We therefore reverse defendant's conviction and remand this case to the trial court for proceedings consistent with our findings.

Reversed and remanded.

HARTMAN, P. J., and STAMOS, J., concur.