THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* WILLIAM DUNCAN *et al.*, Defendants-Appellees.

First District (5th Division)    Nos. 80-778, 80-1110 cons.

Opinion filed March 5, 1982.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (John Thomas Moran, Assistant Public Defender, of counsel), for appellees.

JUSTICE WILSON delivered the opinion of the court:

Pursuant to Supreme Court Rule 604(a)(1) (Ill. Rev. Stat. 1979, ch. 110A, par. 604(a)(1)), the State appeals from an order granting defendants' motions to quash their arrests and to suppress identification testimony. The State argues on appeal that the trial court erred in its ruling that because the prosecutors refused to disclose their informant's identity, the information given by the informant could not be used to establish probable cause for the arrests. Further, the State contends that the photographic and lineup identifications of defendants were erroneously suppressed as being suggestive. Finally, the State argues that notwithstanding the admissibility of this evidence, the victim had an independent, untainted basis for his in-court identification of defendants.

Defendants were charged with aggravated battery following the May 14, 1979, beating of John Gibson. On February 13, 1980, there was a hearing on defendant William Duncan's and Walton Warzala's motions to quash their arrests and to suppress identification evidence. Gibson testified that on May 14, 1979, at 3:30 a.m., he was inside a motor home parked at a well-lighted intersection when a man he later identified as

defendant Duncan approached and began arguing with him. Defendant told him to leave the area and then reached through the open window on the driver's side and pushed Gibson in the face. They continued arguing and Duncan said, "Nobody hits any girl around here." He broke the side view mirror of the motor home. Gibson noticed that Duncan was accompanied by two others, later identified as defendants Walton Warzala and William Votaw. Gibson got out of the motor home and was then hit and kicked by the three defendants for several minutes. A fourth person was nearby but did not participate in the beating. When the police arrived, Gibson described the men. At the February 13 hearing, however, he could not recall the description he gave to the officers. He stated that he had never seen the three men before the incident. He had been drinking that evening but stated that he was not intoxicated.

Officer Berris testified at the hearing that Gibson gave him a general description of his three assailants at the time of the incident. At the hearing, however, he did not recall the description. He further testified that he had received a telephone call from a person whose information led to the arrests of the three defendants. The caller identified himself to Officer Berris, stated that he was a relative of one of the defendants and asked the police to withhold his identity. Defense counsel asked him to disclose the informer's identity and the State objected. The trial judge stated that unless the State disclosed the informer's identity, the contents of the telephone call could not be used to established probable cause for the arrests. The assistant State's Attorney told the judge that the man was a private citizen, not a paid informer, and sought a stipulation to that effect. Defendants declined to acquiesce, and the assistant State's Attorney told the judge that he would honor the State's promise to withhold the informant's identity even though the judge had ruled that the substance of the conversation would be inadmissible.

Defense counsel continued to examine Officer Berris concerning police reports and his investigation of the incident. In response to questioning, Officer Berris admitted that without the informant's telephone call, he would not have located Earl Essig, of Independence Park, who gave him further information. Officer Berris' investigation, based on the informant's statements, revealed the following: two offenders were named Bill and Walt and the third was named Bill Votaw; the three were frequent patrons of the Bear's Den Tavern; and one offender, Bill, was manager of a girl's softball team, the Huggie Bears. Earl Essig supplied the last name of the manager of the Huggie Bears, Bill Duncan.

Defendants Duncan and Warzala were arrested at Independence Park on May 17, 1979. Votaw was arrested on May 23, 1979. Subsequently, Gibson identified all three defendants' photographs from a group of eight.

On June 13, 1979, defendants' preliminary hearing was held. Afterward, Gibson and another person viewed a lineup that followed the hearing. He identified the three defendants as his assailants.

On cross-examination at the February 13, 1980, hearing, Gibson testified that he had concentrated on the faces in the photographs when he identified defendants. He acknowledged at the hearing, however, that there were dates and markings on some of the photographs. He further stated that while he was at the defendants' June 13, 1979, preliminary hearing, he could not recall if defendants were present.

The trial judge ruled that there was no probable cause for defendants' arrests because there was "no information upon which the officer could have made an arrest. Any information that he had came from a telephone conversation which is not admitted." The judge further ruled that because the arrests were illegal, the photographs and lineup identifications were fruits of the illegal arrest and inadmissible. He also stated that the photographs were suggestive. The State then asked for a continuance, which was granted.

When the proceedings recommenced, on March 12, 1980, the State moved the court to reconsider its order quashing the arrests and suppressing the identification evidence. Also, the State asked the court to allow an in-court identification to establish Gibson's ability to identify defendants on an independent basis. Gibson testified in detail as to his ability to observe defendants during the May 14 beating. He also identified Duncan and Warzala in court. The judge stated that he had "no doubt" that Gibson had had ample opportunity to observe defendants, but denied the State's motion.

On April 9, 1980, a separate hearing was held on defendant Votaw's motion to quash his arrest and suppress identification evidence. The parties stipulated that they would adopt all the evidence presented at Duncan's and Warzala's hearing. The judge granted Votaw's motion.

The State then brought this appeal.

OPINION

Initially, defendants move to dismiss this appeal. We have carefully considered the grounds of the motion and find them to be wholly unpersuasive. The appeal is properly before this court, and we will therefore address the merits.

■■ The State contends, and we agree, that the trial court erred in refusing to allow Officer Berris to testify regarding the substance of his conversation with the informer. As reflected in the record, the trial judge believed that unless the State first revealed the informer's identity, his statements were inadmissible to establish probable cause for defendants' arrests. This result, we believe, is inconsistent with the applicable law, which involves two separate but related matters: (1) the scope of the informer's privilege

and (2) the general use of informants' tips to establish probable cause for an arrest or search.

The Illinois informer's identity privilege provides that:

> "Disclosure of an informant's identity shall not be required where his identity is a prosecution secret and a failure to disclose will not infringe the constitutional rights of the accused. Disclosure shall not be denied hereunder of the identity of witnesses to be produced at a hearing or trial." (73 Ill. 2d R. 412(j)(ii).)

The Committee Comments on this rule notes that this privilege is one of the few accorded to the State and explains the importance of protecting sources of information concerning the commission of crimes. In *McCray v. Illinois* (1967), 386 U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056, the court rejected the contention that the Illinois informer's privilege violated the constitution[1] or the Federal rules of evidence and noted that informers, regardless of their motivation, will usually condition their cooperation on an assurance of anonymity. (386 U.S. 300, 308-09, 18 L. Ed. 2d 62, 69, 87 S. Ct. 1056, 1061.) The proper application of the privilege involves balancing the strong public policy reasons favoring it against a defendant's need for disclosure, to prepare his defense. (*Roviaro v. United States* (1957), 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623; *People v. Williams* (1967), 38 Ill. 2d 150, 230 N.E.2d 214.) The burden of showing need is on defendant, and the Illinois Supreme Court has recognized that where there is no evidence that the informant either participated in the crime or was present at the time of arrest, amplification of an informant's statements would be of little assistance to an offender's defense. (*People v. Nettles* (1966), 34 Ill. 2d 52, 55, 213 N.E.2d 536.) While there is no fixed rule with respect to disclosure (*McCray*), if an undisclosed informer·has taken an active role in the crime and might be a material State witness during trial, the privilege must give way to defendant's need to prepare his defense. (*Rovario.*) In contrast, if "the issue is the preliminary one of probable cause, and guilt or innocence is not at stake," the nondisclosure of an informant's identity is not error. *McCray v. Illinois* (1967), 386 U.S. 300, 311, 18 L. Ed. 2d 62, 70, 87 S. Ct. 1056, 1062.

In the pending case, however, defendants take the position that as a constitutional prerequisite to the *admissibility* of an unidentified informer's statements, the State must establish the informer's reliability as well as the underlying circumstances tending to support the informer's conclusion that defendants were involved in criminal activity. They rely on *Aguilar v. Texas* (1964), 378 U.S. 108, 114, 12 L. Ed. 2d 723, 729, 84 S. Ct. 1509, 1514.

---

[1] In *McCray*, defendant had challenged the nondisclosure of an informant's identity on the grounds that it violated his fourteenth amendment right to due process of law and his sixth amendment right to confront witnesses.

■■ *Aguilar* involved the sufficiency of a police officer's affidavit in support of a search warrant. The affidavit merely recited that the officer had obtained "reliable" information from a "credible person" regarding the accused's alleged possession of narcotics. The court noted that an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, but that the magistrate who issues the warrant must be informed of (1) some circumstances that form the basis of the informant's belief that the accused committed a crime, as well as (2) the reasons for the affiant's belief that the informant is credible or reliable. Such facts are necessary to establish probable cause and thus to safeguard the accused person's right to be free of illegal searches and arrests. See also *People v. Tatman* (1980), 85 Ill. App. 3d 274, 406 N.E.2d 619.

■■ In the present case, however, the court curtailed the probable-cause inquiry by refusing to allow the State to elicit the specific contents of the informant's conversation. The State was thereby precluded from explaining to the court the informant's reasons for believing that defendants had beaten the victim and Officer Berris' basis for believing that the informant's statements were credible. Because such information goes to the heart of the probable-cause issue, its exclusion resulted in the trial judge's failure to become fully apprised of the facts upon which the validity of the arrest depended. Furthermore, the court's refusal to admit the informant's statement grew out of its apparent misunderstanding of the nondisclosure privilege. An excerpt from a New Jersey Supreme Court decision, cited approvingly in *McCray*, succinctly comments on the probable-cause informer's identity problem:

> " 'If a defendant may insist upon disclosure of the informant in order to test the truth of the officer's statement that there is an informant or as to what the informant related or as to the informant's reliability, we can be sure that every defendant will demand disclosure. He has nothing to lose and the prize may be the suppression of damaging evidence if the State cannot afford to reveal its source, as is so often the case. And since there is no way to test the good faith of a defendant who presses the demand, we must assume the routine demand would have to be routinely granted. *The result would be that the State could use the informant's information only as a lead and could search only if it could gather adequate evidence of probable cause apart from the informant's data.* Perhaps that approach would sharpen investigatorial techniques, but we doubt that there would be enough talent and time to cope with crime upon that basis. Rather, we accept the premise that the informer is a vital part of society's defensive arsenal. The basic rule protecting his identity rests upon that belief.

* * *

We must remember also that we are not dealing with the trial of the criminal charge itself. There the need for a truthful verdict outweighs society's need for the informer privilege. * * *' " (Emphasis added.) (*State v. Burnett* (1964), 42 N.J. 377, 385-88, 201 A.2d 39, 43-45, quoted in *People v. McCray* (1967), 386 U.S. 300, 306-07, 18 L. Ed. 2d 62, 68, 87 S. Ct. 1056, 1060.)

We find this reasoning persuasive and hold that the trial court erred in refusing to hear the full testimony as to the informer's tip.

Defendants also challenge the status of the informant as an "ordinary citizen" rather than a "professional police" informant. They argue that a citizen-informant's identity must always be disclosed unless he actually witnessed the crime. This theory, unsupported by citations, seemingly contradicts the concept that an informant who witnesses the crime might be necessary for the defendant's defense and therefore *cannot* have his identity withheld. Apparently, defendants confused the applicability of the privilege with the *Aguilar* requirement that an informer be reliable, which generally is presumed when a private citizen informs police as to crime.

The use of professional police informers, especially in the narcotics area, is widespread; it was in the context of the need to ensure reliable information that the *Aguilar* requirements developed. In *United States v. Burke* (2d Cir. 1975), 517 F.2d 377, 380, the court noted that *Aguilar* was addressed to the particular problem of professional informers and "should not be applied in a wooden fashion to cases where the information comes from an alleged victim of or witness to crime." The court reasoned that victims' and eyewitnesses' information has inherent reliability to the extent that such persons who report crime to police "by definition are not passing along idle rumor," which is a risk in the informant situation. (517 F.2d 377, 380 n.2.) The court thus distinguished one type of "informer" (victim or eyewitness) from the professional informant whose cooperation with police often springs from self-serving motives.

In *McCray*, the court held that a police informant's reliability, for purposes of the *Aguilar* mandate, would be satisfied either by independent corroboration of the information or by an informant's history of past reliability. See also *People v. Nettles* (1966), 34 Ill. 2d 52, 213 N.E.2d 536.

In Illinois, a citizen-informant doctrine has further been recognized. (See *People v. Hester* (1968), 39 Ill. 2d 489, 237 N.E.2d 466; *People v. Garcia* (1981), 94 Ill. App. 3d 940, 419 N.E.2d 542.) In *Garcia,* the court noted that the first prong of the *Aguilar* test (reliability) is met where the informant is an ordinary citizen and that, absent contrary indications, one is presumed to be an ordinary citizen. The court further noted, "Meeting the first prong in this way is especially accepted where the informant is a

victim of the crime or an eyewitness to it." 94 Ill. App. 3d 940, 945, 419 N.E.2d 542, 547. See also *People v. Rinaldo* (1976), 34 Ill. App. 3d 999, 341 N.E.2d 166; *People v. Perry* (1980), 81 Ill. App. 3d 422, 401 N.E.2d 1263; *cf. People v. Gates* (1981), 85 Ill. 2d 376, 423 N.E.2d 887 (anonymous letter that lacked sufficient details to enable magistrate to ascertain informant's veracity was insufficient to establish probable cause for a search warrant).

■■ In the pending case, the informant is not an unknown or anonymous person whose veracity is totally unascertainable. In talking to Officer Berris, he divulged his name and his relationship to one of the defendants, after requesting that his name be withheld. Thus, the citizen-informant presumption of reliability appears appropriate in this case.[2]

We conclude that we must reverse the trial court's ruling and remand the cause for a new hearing on the issue of probable cause. Assuming that there is no evidence adduced that would rebut the informant's citizen status, or his presumed reliability, the second prong of *Aguilar* will be critical to the ultimate determination of this issue. Ths informant's basis-of-knowledge prong, as previously discussed, will be determined by the court on the basis of Officer Berris' full testimony as to the informant's conversation. By evaluating this testimony the court will determine if the officer's reliance on the man's information provided probable cause for defendants' arrests. The separate matter involving the informer's identity privilege may then be determined according to the authorities and concerns relevant to that issue.

■■ Because of the above disposition, we need not review at length the other issues raised on appeal. We note, however, that if the court upon rehearing determines that the officers had probable cause to arrest defendants, the admissibility of the lineup identification evidence should also be reconsidered; we cannot ascertain from the record if its suppression was based solely on the supposed illegality of the arrests or if it was suppressed as being improperly suggestive, in which case it would be inadmissible on that basis. However, because the trial court specifically found that, apart from being fruits of an illegal arrest, the photographic evidence was suggestive, we see no reason to disturb the court's judgment on that issue.

For the foregoing reasons, we reverse the trial court's order and remand the cause for a new hearing in accordance with this opinion.

Reversed and remanded, with directions.

. LORENZ and MEJDA, JJ., concur.

---

[2] We do not know if the informant witnessed the beating; however we do not read the cases as limiting the citizen-informant principle of reliability to eyewitnesses or victims. See *Rinaldo; People v. Delk* (1981), 96 Ill. App. 3d 891, 896, 421 N.E.2d 1341.