THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EUGENE KROGH (Impleaded), Defendant-Appellant.

First District (3rd Division)   No. 82—1402

Opinion filed March 30, 1984.

James W. Reilley and Barry E. Witlin, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Marie Quinlivan, and Harry H. Semrow, Jr., Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE RIZZI delivered the opinion of the court:
Following a jury trial, defendant, Eugene Krogh, was convicted of the delivery of a controlled substance (Ill. Rev. Stat. 1979, ch. 56½, par. 1401(a)(2)) and sentenced to the Illinois Department of Correc-

tions for a period of six years. A codefendant who was tried in a bench trial begun simultaneously with defendant's jury trial is not a party to this appeal. On appeal, defendant argues that the court erred in denying his motion to quash his arrest, in restricting his cross-examination of a State's witness and in refusing to grant a mistrial after a State's witness commented on defendant's immediate post-arrest silence and that the court abused its discretion in preventing him from questioning two State's witnesses about his signed consent to search his automobile. We affirm.

Prior to trial, defendant moved to quash his arrest and to suppress his statements. At the hearing on defendant's motion to quash, Agent Danny Pierce of the Illinois Department of Law Enforcement testified that on May 8, 1980, he was assigned to a backup and surveillance unit for a "drug buy." The purchase of 12 ounces of cocaine for $14,400 was to take place around 1:30 p.m. in a forest preserve parking lot near the intersection of Route 72 and Barrington Road. Pierce knew that a maroon Toronado might be the vehicle involved. Pierce was stationed at a Shell gas station on the southeast corner of Route 72 and Barrington Road.

At approximately 1:30 p.m. Pierce observed a brown Chevy going south on Barrington Road. Pierce saw the Chevy slow down, though there was no traffic immediately ahead of it. A couple of minutes later, Peirce saw the Chevy go north on Barrington Road and turn into the forest preserve parking lot. Agent Grady, who was stationed in the forest preserve parking lot, informed Pierce by radio that while in the parking lot the driver of the brown Chevy emptied his ashtray and observed all the people and vehicles in the lot. Pierce saw the Chevy leave the forest preserve parking lot, go north on Barrington Road and pull into the gas station where Pierce was stationed. The driver, whom Pierce identified as defendant, got out of his car, walked to the men's room and attempted, unsuccessfully, to open the door. He then returned to his car and stayed there for a few minutes. Defendant then got out of his car, walked to a place about 10 feet from Barrington Road in the driveway of the gas station and looked north at the traffic coming south. Then, defendant raised both his arms up, with his elbows bent and his fingers spread and waved his arms while nodding his head up and down. As defendant was waving, the driver of a maroon Toronado that was passing looked toward defendant, nodded his head and raised his left hand upward, then turned into the forest preserve parking lot. Immediately after the Toronado passed, defendant got into his car, drove to the parking lot of an implement company building located directly across from the

forest preserve parking lot, and went inside the building. When another agent gave the prearranged signal indicating either that it was time to arrest the driver of the Toronado, the codefendant, or that the delivery had taken place, Agent Thomas Petersik, who was in charge of the investigation, advised agents to arrest defendant, and they did. Petersik testified that in his experience it is very seldom that only one person is involved in the sale of a large quantity of drugs. The court found, on the basis of Petersik's experience and defendant's conduct, that probable cause existed to arrest defendant, and the court denied defendant's motion to quash his arrest.

After another hearing, the court denied defendant's motion to suppress his statements, on the basis that defendant had received adequate *Miranda* warnings and had waived his rights under *Miranda*. The court granted defendant's motion *in limine* to exclude the introduction of, or reference to, items recovered from defendant's vehicle.

At trial, the evidence showed the same sequence of the events of May 8, 1980. In addition, Agents Petersik and DeFranco testified that after defendant was advised of his rights, defendant told them that he was the lookout, he was to receive a percentage of the $14,000 and that it was his "stuff." Defendant also signed a waiver of rights form. However, the agents did not get a written statement from defendant. The jury found defendant guilty of delivery of a controlled substance.

Defendant first argues that the court erred in denying his motion to quash his arrest because the agents did not have probable cause to arrest him. Defendant maintains that while his activities may have been suspicious, the fact that the agents had no prior knowledge of him or of any involvement by him, and the fact that the agents' past dealings with the codefendant either involved no other people or else people other than defendant mitigate against the conclusion that the agents had probable cause to arrest him. We believe that defendant's argument is meritless.

■■ ■ The determination of whether probable cause for an arrest exists in a specific instance depends on the totality of the facts and circumstances known to the officers when the arrest is made. (*People v. Summers* (1981), 100 Ill. App. 3d 170, 174, 426 N.E.2d 937, 940.) Probable cause is present if a reasonable and prudent person in possession of the knowledge which has come to the arresting officers would believe that the person to be arrested had committed a crime. (100 Ill. App. 3d 170, 174, 426 N.E.2d 937, 940.) The investigating officer may rely upon his knowledge and experience and the reasonable inferences drawn from observed facts. (*People v. Stamps* (1982), 108 Ill. App. 3d 280, 287, 438 N.E.2d 1282, 1289-90.) Probable cause for

an arrest may be established on the basis of all the information possessed by the officers working in concert. *People v. Johnson* (1982), 104 Ill. App. 3d 572, 576, 432 N.E.2d 1232, 1237.

■ Here, the agents initially had the knowledge, based on their experience, that drug buys such as the one scheduled for the afternoon of May 8, 1980, seldom involve only one person. We do not believe that to support a finding of probable cause the agents needed knowledge that defendant in particular might be involved in the scheduled transaction. Aware that someone else might be involved, the agents observed defendant in the area where a drug buy was soon scheduled to take place. Defendant's driving and his actions in the forest preserve parking lot were somewhat suspicious. Then, the agents observed defendant give an obvious signal to the driver of a vehicle they were expecting and remain in the area while the deal took place. We believe that the observations and experience of the agents involved in the investigation here would warrant a reasonable person in believing that an offense had been committed and that defendant had committed the offense. Thus, we conclude that the trial court did not err in denying defendant's motion to quash his arrest.

■ ■ Next, defendant argues that the court erred in restricting his cross-examination of Agent Fieroh regarding a drug purchase from the codefendant which did not involve defendant. Defendant's offer of proof revealed that Fieroh had purchased cocaine from the codefendant and another person approximately nine days before the purchase involved here. Defendant contends that Fieroh's testimony was relevant in that it would tend to create a reasonable doubt of defendant's association with the codefendant and of defendant's participation in the codefendant's delivery of the cocaine. We disagree.

The latitude to be allowed in the cross-examination of a witness rests within the discretion of the court, and a reviewing court will interfere only when there is a clear abuse of discretion resulting in manifest prejudice to the defendant. (*People v. Gallo* (1973), 54 Ill. 2d 343, 356, 297 N.E.2d 569, 576.) We believe that evidence of the codefendant's involvement in a drug deal that did not involve defendant was not relevant to defendant's involvement in the drug purchase here. Moreover, defendant was able to establish during the cross-examination that Fieroh had no prior dealings with defendant and, in particular, that Fieroh did not negotiate this purchase of cocaine with defendant. In addition, from the cross-examination, the jury learned that when Fieroh first met the codefendant, the codefendant was in the presence of another person, not defendant. Thus, even without hearing the specifics of any prior deal, the jury learned that Fieroh

had no prior dealings with defendant. We therefore conclude that the court did not abuse its discretion in restricting the cross-examination.

■■ Defendant next contends that the court erred in refusing to grant a mistrial after a State's witness testified that defendant "made no comment whatsoever" immediately after he was arrested. The witness' testimony referred to defendant's silence before he was given *Miranda* warnings. Thus, the testimony regarding defendant's silence was proper under *Fletcher v. Weir* (1982), 455 U.S. 603, 71 L. Ed. 2d 490, 102 S. Ct. 1309, but improper under *People v. Beller* (1979), 74 Ill. 2d 514, 386 N.E.2d 857. In *People v. Miller* (1983), 96 Ill. 2d 385, 450 N.E.2d 322, the Illinois Supreme Court spoke of the dichotomy between *Fletcher* and *Beller*, but it did not decide whether it would follow *Fletcher* or continue to follow *Beller*. (96 Ill. 2d 385, 393, 450 N.E.2d 322, 326.) Rather, in *Miller*, the court held that if there was error on the issue, it was harmless because the trial court admonished the jury, the disputed comment by the witness was an isolated incident, and the evidence was sufficient to prove the defendant guilty beyond a reasonable doubt. (96 Ill. 2d 385, 395-96, 450 N.E.2d 322, 327.) Since the same circumstances occurred and the same conclusion may be reached in the present case, we feel that we are bound to follow the holding of the supreme court in *Miller*. Therefore, we hold that the court properly denied defendant's motion for a mistrial.

■■ Lastly, defendant argues that the court abused its discretion in preventing defendant from questioning two State's witnesses about his signed consent to search his automobile. Specifically, defendant contends that he should have been permitted to cross-examine Agent DeFranco about the signed consent and that he should have been able to introduce evidence of the consent to search after Agent Petersik opened the door by testifying on direct examination that he believed a search of defendant's car was conducted at the Schaumburg police department. Defendant maintains that evidence of his signed consent to search would demonstrate his cooperation after his arrest and indirectly discredit his confession, which was not in writing. We believe that defendant's argument lacks merit.

The latitude to be allowed in cross-examination is within the discretion of the court, and a reviewing court will interfere only when there is a clear abuse of discretion resulting in manifest prejudice to the defendant. (*People v. Gallo* (1973), 54 Ill. 2d 343, 356, 297 N.E.2d 569, 576.) Here, the court properly determined that if defendant were to elicit testimony that he had consented to a car search, the jury might infer that nothing was found in the search. Thus, the court indicated that it would reconsider its previous ruling on defendant's mo-

tion *in limine* which precluded the State from introducing evidence recovered in the car search. Defendant then withdrew his request to ask about the consent form. When, under direct examination, Agent Petersik inadvertently testified that the car had been searched, we believe that the court was faced with the same considerations, weighed them, and properly decided to admit the evidence that the search took place without allowing counsel to go into either the consent form or the results of the search. Under the circumstances, we do not believe that the court abused its discretion regarding testimony about defendant's consent to search or that defendant was prejudiced by the court's ruling.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.