THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DENNIS L. FOX, SR., Defendant-Appellee.

Second District   No. 2—86—0611

Opinion filed May 13, 1987.

Robert J. Morrow, State's Attorney, of Geneva (William L. Browers and Lori J. Miller, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Jonathan L. Carbary, of Roeser, Vucha & Carbary, of Elgin, for appellee.

JUSTICE REINHARD delivered the opinion of the court:
The State appeals pursuant to Supreme Court Rule 604(a)(1) (103

Ill. 2d R. 604(a)(1)) from orders by the circuit court of Kane County granting both a motion to quash arrest and suppress illegally seized evidence and a motion to suppress confession filed by defendant, Dennis L. Fox, Sr.

Defendant was charged by indictment with unlawful delivery of a controlled substance (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2)), calculated criminal drug conspiracy (Ill. Rev. Stat. 1985, ch. 56½, par. 1405), and unlawful possession of a controlled substance (Ill. Rev. Stat. 1985, ch. 56½, par. 1402(b)). He filed a motion to quash his arrest and to suppress any evidence illegally seized pursuant to the arrest. Defendant alleged the arrest was without a warrant and without probable cause.

At a hearing on the motion to quash the arrest and suppress evidence illegally seized, Special Agent James Kizart of the Illinois State Police testified that between February 13 and April 24, 1985, he first came in contact with Jeffrey Decker and Michael Rouley as a part of a drug investigation. On February 13, 1985, he made a purchase of cocaine from Decker. Other purchases of cocaine were made from both Decker and Rouley. Rouley said Decker was getting the drugs from him, but did not divulge his own source. Kizart arranged for another purchase of cocaine to be made on April 24, 1985, at the Wendy's parking lot in Spring Hill Mall in West Dundee, Illinois. He met with Rouley and Decker at 4 p.m. on that date and place, but the transaction was not consummated because they did not have the drugs with them and Kizart would not pay them without obtaining the drugs at the same time. Rouley left to make a telephone call and, when he returned, told Kizart he wanted to see the money and then would call his source. Then Decker made a telephone call and told Kizart they would have to wait for another telephone call and for "his man," who was coming from Rolling Meadows with the drugs. They agreed to meet again about 7 p.m. Rouley and Decker were in a gray Ford.

Special Agent Thomas A. O'Donnell was in the Spring Hill Mall as a part of a surveillance team and saw Rouley go make a telephone call. He overheard Rouley say "give me Dennis' phone number at work." He then saw Rouley hang up and make a collect call and heard part of a conversation about the drug transaction.

At about 7:25 p.m., Rouley arrived back at the Spring Hill Mall in a 1980 Chrysler being driven by a person later determined to be defendant. The car first passed through the Wendy's lot and then returned about two minutes later and stopped. Rouley exited and told Kizart that "his man" was there with the stuff and said it would take

15 minutes to get ready. Rouley left in the car. Another agent, Larry W. Mason, observed this car depart and proceed over to another part of the mall and stop. The license plate, Fox 738, was checked and determined to be registered to defendant, Dennis L. Fox, Sr.

A short while later, Kizart purchased two ounces of cocaine from Rouley for $4,000. He then signalled other officers to arrest Rouley and Decker, who had arrived in another car and had waited with Kizart while Rouley had left for a short while. Kizart testified that this was a general signal to other officers to make whatever arrests they decided. Another special agent, Emad Eassa, was part of the surveillance team and saw defendant's car go through the Wendy's lot with a passenger whom he could not identify. However, he did receive a radio transmission that one of the subjects, Rouley or Decker, was a passenger in the car. He saw the car come back a second time and then leave without a passenger. The car parked about 200 feet from Wendy's. He observed the car and the driver remain in the car. He knew who Rouley was and expected that after the drug transaction, they would arrest him. He didn't expect anyone else to be there for the sale. When the arrest signal was given, he proceeded over to the Chrysler and arrested defendant.

The trial judge granted the motion to quash the arrest finding no probable cause to arrest defendant based on his lack of involvement in the drug transaction other than that he might have given a ride to someone and drove away. Immediately following the granting of the motion, the prosecutor asked for the opportunity to argue what evidence should be suppressed resulting from the court's finding. The court was informed that evidence was seized from defendant and that he also gave a statement. The prosecutor further stated that the statement was attenuated from the taint of the illegal arrest. The court suppressed the evidence seized from defendant's person, and defendant's counsel indicated he would file another motion to suppress the statement. Defendant filed a motion to suppress this confession contending that the statement was the fruit of an illegal arrest and, in addition, alleging other reasons for suppression unrelated to the arrest. This motion was heard before Judge Nickels because Judge Puklin, who heard the original motion to quash the arrest, was reassigned to other matters.

Special Agents Eassa and O'Donnell testified again to defendant's arrest and further related that defendant gave oral and written statements at the police station within two hours after being advised of the *Miranda* warnings. In addition, Agent Eassa related that before he arrested defendant, he was informed by other agents that Rouley

was the passenger who got out of defendant's car and that Dennis had been the name mentioned while Rouley or Decker was on the telephone during part of the drug transaction. He also knew that Rouley and Decker were meeting with Agent Kizart to sell Kizart cocaine. Further, prior to the arrest, he had seen defendant's license plate and discovered from other agents that it was registered to defendant. Judge Nickels refused to reassess Judge Puklin's original order granting the motion to quash the arrest and granted the motion to suppress defendant's statements finding that the taint of the illegal arrest was not attenuated under the circumstances. Notice of this interlocutory appeal was filed following this decision.

On appeal, the State contends that the original order quashing the arrest was erroneous because probable cause to arrest defendant existed. Alternatively, the State maintains that even if the original order was correct, the taint of the illegal arrest was sufficiently attenuated before defendant's statements thereby requiring reversal of the subsequent order suppressing the statements.

Before proceeding to an analysis of these issues, we must consider first defendant's motion to strike that part of the State's brief relating to the order granting the original motion to quash the arrest and suppress evidence illegally seized and the State's response thereto, both ordered to be taken with the case. Defendant contends that the original order quashing the arrest and suppressing evidence illegally seized was entered February 28, 1986, and no notice of appeal was filed within 30 days of that final order. Defendant asserts that the notice of appeal was not filed until July 6, 1986, following the entry of the second order on June 6, 1986, suppressing the statements, and, therefore, this court has jurisdiction to review only the June 6 order relating to suppression of the statements.

The State responds that it is apparent that at the time the original order of February 28, 1986, was entered quashing the arrest and suppressing certain evidence, that Judge Puklin contemplated making a further order relating to the statements and, accordingly, the order was not final. The State suggests that to allow defendant's argument would foster piecemeal litigation and result in two separate interlocutory appeals before trial.

Defendant's original motion was both to quash his warrantless arrest and to suppress evidence illegally seized based upon his allegation that there was no probable cause to arrest him. In the motion he sought that "any evidence" obtained be suppressed. The hearing on this motion focused on the officers' probable cause to arrest him rather than what evidence was seized or later obtained as a result of

the arrest. At the conclusion of the hearing and following Judge Puklin's finding of no probable cause, the court inquired about what evidence was to be suppressed. He was informed by the prosecutor that some evidence was seized from defendant at the time of his arrest and that statements were subsequently taken at the police station. The prosecution indicated that the statements were attenuated from the taint of the illegal arrest. The facts relating to the statements had not been testified to at the hearing, although some testimony indicated that drugs were found on his person. The court suppressed the drugs as evidence. Defendant indicated he would file another motion to suppress the statements, and the matter was continued to a day certain to be heard. The motion to suppress the statements was later filed, and included as a ground for suppression was not only the illegal arrest, but also that the confessions were obtained in violation of his *Miranda* rights.

While the Code of Criminal Procedure of 1963 does not specifically provide for a motion to quash arrest, section 114—12 of the Code authorizes a defendant aggrieved by an unlawful search and seizure to move to suppress as evidence anything so obtained on the ground that the search and seizure was without a warrant and was illegal. (Ill. Rev. Stat. 1985, ch. 38, par. 114—12(a)(1).) It is generally the practice to file a motion to quash arrest and suppress evidence when seeking to suppress evidence, including statements, based upon a lack of probable cause to make a warrantless arrest (see, *e.g.*, *People v. Johnson* (1983), 94 Ill. 2d 148, 445 N.E.2d 777; *People v. Reynolds* (1983), 94 Ill. 2d 160, 445 N.E.2d 766), as a successful motion to quash arrest without the ensuing suppression of evidence is of little effect.

In the instant case, the original motion filed was labeled a motion to quash warrantless arrest and to suppress evidence illegally seized. The motion prayed that "any evidence" obtained resulting from the illegal warrantless arrest be suppressed. Thus, once the court determined that there was no probable cause for the arrest, the motion was not entirely addressed until the court determined what evidence was to be suppressed, including defendant's statements. The second hearing to determine whether the statement was attenuated from the taint of the illegal arrest was a continuation of the original hearing and was related to the first motion. In fact, the matter was continued to a day certain following the original hearing.

The first order was not a final and appealable order until the trial court made a complete, final, and appealable determination of the entire suppression matter at the second hearing. (See *People v.*

*Rembert* (1980), 89 Ill. App. 3d 371, 374-75, 411 N.E.2d 996; *People v. Jackson* (1979), 77 Ill. App. 3d 117, 120-21, 395 N.E.2d 976.) To hold otherwise would foster piecemeal appeals. We note, too, that while the subsequent motion to suppress confessions alleged the additional ground of *Miranda* violations, the motion specified that it was based, as well, on the illegal arrest without probable cause. Under the circumstances described, the notice of appeal was timely filed within 30 days of the second order, and we deny defendant's motion to strike the State's argument in its brief relating to the original order.

The first issue raised by the State is whether Judge Puklin's order quashing the arrest for lack of probable cause was manifestly erroneous. The State maintains that the aggregate knowledge of all the officers who testified to the occurrence was sufficient to establish probable cause to arrest the defendant. Defendant argues that whether the officers' knowledge is viewed individually or collectively, the totality of that knowledge provides only a suspicion that defendant was involved in criminal activity with Rouley and Decker not rising to probable cause to arrest him.

■ ■ A reviewing court will not disturb the circuit court's finding on a motion to suppress unless that finding is determined to be manifestly erroneous. (*People v. Reynolds* (1983), 94 Ill. 2d 160, 165, 445 N.E.2d 766.) Since the arrest here was without a warrant, it was a valid arrest only if it was supported by probable cause. (*People v. Montgomery* (1986), 112 Ill. 2d 517, 525, 494 N.E.2d 475.) "Probable cause exists when the totality of the facts and circumstances known to the officers is such that a reasonably prudent person would believe that the suspect is committing or has committed a crime. (*Dunaway v. New York* (1979), 442 U.S. 200, 208 n.9, 60 L. Ed. 2d 824, 833 n.9, 99 S. Ct. 2248, 2254 n.9; *Beck v. Ohio* (1964), 379 U.S. 89, 91, 13 L. Ed. 2d 142, 145, 85 S. Ct. 223, 225; *People v. Tisler* (1984), 103 Ill. 2d 226, 237.) Whether probable cause is present is governed by common-sense considerations (*Brinegar v. United States* (1949), 338 U.S. 160, 175, 93 L. Ed. 1879, 1890, 69 S. Ct. 1302, 1310; *People v. Tisler* (1984), 103 Ill. 2d 226, 236), and the calculation concerns '[t]he probability of criminal activity, rather than proof beyond a reasonable doubt.' *People v. Tisler* (1984), 103 Ill. 2d 226, 236." (*People v. Montgomery* (1986), 112 Ill. 2d 517, 525, 494 N.E.2d 475.) In dealing with probable cause we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. *People v. Moody* (1983), 94 Ill. 2d 1, 7-8, 445 N.E.2d 275.

Here, Agent Eassa, who arrested defendant, was part of a team

of officers conducting surveillance over approximately four hours while Agent Kizart, in an undercover capacity, was arranging for a purchase of cocaine which eventually resulted in a sale of cocaine. Although Eassa knew about the contemplated sale from either Rouley or Decker and that Rouley had sold drugs to Kizart previously, he did not know defendant or actually identify him as being with Rouley that evening. However, he did receive a radio transmission that one of the subjects (Rouley and Decker) was a passenger in a car going through the parking lot. He also saw defendant's car go first into the Wendy's lot and leave. A few minutes later, he saw the same car enter the lot again with a passenger and leave without the passenger. He watched the car drive into the mall parking lot and remain there, only about 200 feet from Wendy's. Defendant remained in the car, and, once Eassa received the prearranged arrest signal from Kizart, he proceeded to the car and arrested defendant.

Agent Kizart, who gave the arrest signal, had arranged for the drug sale with Decker and Rouley and, when they learned Kizart would not pay them for the sale except at the time the cocaine was delivered, told Kizart that their source was coming from Rolling Meadows with the drugs and they would meet again later. Subsequently, Kizart observed Rouley in defendant's car, and Rouley told him "his man" was there with the stuff and would take 15 minutes to get ready. Rouley left in defendant's car and later returned with the cocaine.

Two other agents of the surveillance team testified that the license plate of the vehicle defendant was driving was registered to him, Dennis L. Fox, Sr., and that the name Dennis and a conversation about a drug transaction by Rouley were overheard at the time of the earlier meeting.

■ Where officers are working together, the knowledge of each is the knowledge of all, and the arresting officer has the right to rely on the knowledge of the officer giving the command together with his own personal knowledge. (*People v. Peak* (1963), 29 Ill. 2d 343, 348-49, 194 N.E.2d 322; see also *People v. Parks* (1971), 48 Ill. 2d 232, 236-37, 269 N.E.2d 484.) Probable cause for an arrest may be established on the basis of all the information by the officers working in concert (*People v. Krogh* (1984), 123 Ill. App. 3d 220, 223-24, 462 N.E.2d 790; *People v. Hobson* (1983), 117 Ill. App. 3d 191, 202, 452 N.E.2d 771), and, even if such knowledge is not told to the arresting officer, it may be considered by the trial court in determining whether there was probable cause so long as such information was somehow placed in the record (*People v. Garcia* (1981), 94 Ill. App. 3d 940, 944-

45, 419 N.E.2d 542).

While defendant argues that the sharing and exchange of information of defendant's participation in the crime is necessary before an arrest, we reject such an interpretation of the case law. Where officers are acting in concert in investigating a crime or possible crime, probable cause can be established from all the information collectively received by the officers even if not known to the arresting officer. (*People v. Krogh* (1984), 123 Ill. App. 3d 220, 223-24, 462 N.E.2d 790; *People v. Garcia* (1981), 94 Ill. App. 3d 940, 944-45, 419 N.E.2d 542.) This case illustrates the importance and practicability of this rule, which is an acknowledgement that many arrests, particularly in undercover narcotics cases, involve more than one officer and require police to act promptly, often under difficult circumstances.

■ We conclude from the facts present that there clearly was probable cause to arrest defendant as being involved in this drug transaction based on the knowledge of all the agents' testimony. A prearranged cocaine sale was to take place between Agent Kizart and known drug dealers, Decker and Rouley. The source of the cocaine apparently was a person called Dennis, as learned by one of the agents overhearing a telephone conversation by Rouley. When the consummation of the sale was to take place later, defendant drove his automobile to the location of the sale, proceeded slowly through the Wendy's parking lot twice, dropping off Rouley the second time. Rouley told Kizart "his man" was here with the stuff. Defendant drove away, but remained in the area where the drug transaction was to occur. Rouley later appeared with the cocaine.

Even were we to consider just the knowledge of the arresting agent, Eassa, and the agent signalling for the arrest, Kizart, there still was probable cause for the arrest. Based on their experience and knowledge, there was probable cause to believe defendant was the source of the cocaine through defendant's actions, Rouley's statements, and the entire circumstances of that afternoon and evening surrounding the planning and execution of the drug sale.

As the State has not contended that the additional testimony of Agent Eassa at the second hearing ought to be considered by this court in determining his probable cause to arrest defendant, we need not consider whether such evidence may be used by this court and whether a successor judge may under these circumstances modify or change the prior judge's ruling granting defendant's motion to quash arrest and suppress evidence.

For the foregoing reasons, we find that Judge Puklin's order quashing the arrest and suppressing evidence was manifestly errone-

ous, and we reverse that order as well as Judge Nickel's later order, based, in part, thereon, suppressing defendant's statements following his arrest. The matter is remanded for further proceedings. In view of our decision on this basis, we need not consider the State's alternative contention on appeal that defendant's statements were attenuated from the taint of any illegal arrest.

Reversed and remanded.

LINDBERG, P.J., and UNVERZAGT, J., concur.